The opinion of the court was delivered'vby
McEneky, J.
The defendant, is a cotton buyer engaged in .purchasing cotton and shipping it from the port of New Orleans.
The cotton so purchased, is insured in an open policy in the Atlantic *927 Mutual Insurance Company, a foreign corporation having no agent, in the State of Louisiana, appointed as the law requires.
The State Tax Collector proceeded, by rule, against the defendant to compel him to pay, personally, the license which it is alleged is due by said insurance company under the provisions of Sec. 1 of Act 150 of 1890.
This section graduates licenses on each and every insurance company, association, corporation, or other organization or firm or individual doing and conducting an insurance business of any kind * * * whether such company * * * or other organization, firm or individual is located or domiciled here, or operating here through a branch department, resident board, local office, firm, company, or corporation or agency of any kind whatsoever, shall pay a separate and distinct license on said business for each company represented * * * ■on all risks located within the State, and upon risks located in other States or foreign countries upon which no license has been paid. In the proviso to the section, there is a prohibition to any foreign corporation doing business in this State, except through an agent duly Authorized and accredited for the purposes of said business, and for all purposes connected with licenses and taxation and service of process.
The agent is to be appointed by authentic act, a copy of which is to be deposited with the Secretary of State. The proviso further ■states that any person or firm who shall fill up or sign a policy or certificate of insurance, on open marine or fire insurance policy for a ■corporation, association or persons not located or represented in this State shall be considered the agent of such corporation, firm, association or persons, and shall be liable for all taxes, licenses and penalties enforced by the provisions of this act upon such persons, corporation or association, as if represented by a legally appointed agent.
The open policy issued by the Atlantic Mutual Insurance Company is one in which an aggregate amount is expressed in the body of the policy, and the specific amounts and subjects are to be endorsed from time to time in the policy.
There is no dispute as to the fact, that this open policy was consented to in New York, and the policy issued directly from the domicile of the company. It was issued to the defendant, J. Herbert Williams, on account of himself, and to cover cotton in bales pur *928 chased and shipped by him, on which drafts are drawn for the purchase, upon whom it may concern.
The amount of the open policy is two hundred thousand dollars,, covering shipments of cotton from 23d September, 1893, to September 23, 1894, “ to ports in Great Britain direct or via New York for transhipment, and to ports on the Continent between Hamburg and Trieste inclusive, direct or via New York for transhipment; including the risk of fire at New Orleans, while in preparation for, or in process of shipment or awaiting shipment, but no fire risk prior to shipment to be covered, unless the vessel is in port loading or ready to load, or until the cotton is discharged from the railroad cars and at the risk of J. Herbert Williams, premium to be paid by the-assured at the rates of this company.
“ No risk is to be insured by this policy until a letter signed by J. Herbert Williams and addressed to the president of this company, detailing name of vessel, particulars of shipment, with description of the property and amounts to be insured, is deposited in the postofficeat New Orleans, which must be done, while the property is in good safety, in all cases prior to the departure of the risk from New Orleans; a duplicate letter to be sent by the following mail.
A new and separate policy to be issued for each risk, the premium-on which is to be paid in cash upon the delivery of such policy in New York to J. Herbert Williams. Risks endorsed hereon and subsequently taken off and new and separate policies issued, not to exhaust this policy.
. “ The said goods and merchandise hereby insured are valued, including premiums, at the sums expressed in the letter of advice as provided for herein, but not to exceed the invoice cost and ten per cent.” The policy .requires the notice, or application as it is called' in the testimqny, -to be mailed prior to the shipment, and on its receipt the company has a right to accept or reject the application for insurance on the particular shipment. We presume the.notice is required to inform the company whether or no the conditions pre; scribed by the policy, previously issued in New York, have been complied with. The policy required the premium on the insurance-of any particular shipment of cotton, to be paid on the presentation of the invoice or bill of lading and notice of shipment. The defendant, in pursuance of the terms of the policy, makes an application through his broker in New York, to insure prior to the shipment of' the cotton. His broker pays the insurance.
*929 In the ease of Douville vs. Insurance Company, 12 An. 259, this Court interpreted an open policy similar in all essentials to the one under consideration.
In that case the plaintiff had failed to furnish the defendant company with an invoice of goods, purchased in Paris, which were lost under an open policy.
This Court said, <f On a policy of insurance in this form, there must necessarily exist as many contracts of insurance as there are, endorsements upon the policy of separate shipments of goods. The ■delivery of the policy four years previously did not constitute a contract of insurance upon goods which might be shipped by the Arctic. -Something more was required, viz.: Consent on the part of the plaintiff, a production of her invoices and the payment of the premium on her behalf, and a communication of the unusual manner in which these goods were intended to be brought over, viz., in the •trunks of a partner and an employé of the house, as baggage; and, on behalf of the company, an agreement to take the risk in this form.” The principle announced here will govern this ease. The •company, by the terms of the policy, had the right to have notice of the mode of shipment, and it could accept the policy or reject it if the shipment was by unusual methods, and incurred extra and hazardous risks. The open policy in this case is even stronger in favor of the separate contracts of insurance being completed in the State of New York, by the acceptance of the company, or it would be more accurate to say that each shipment of cotton and the insurance thereon, is part and parcel of the original contract of insurance, as it must be referred to the open policy for construction and interpretation. In that policy is found all the conditions for each separate shipment and insurance of cotton covered by the open policy. In the separate contracts or shipments there is no agreement or condition that is not found in the open policy.
While the open policy is a separate insurance on each shipment of cotton, and the risk is to commence, as stated in the policy, from its loading on shipboard, or awaiting shipment, this is only one incident of the contract, material and important, but does not control the fact as to the place of making the contract. This is to be determined by the final assent to it, when it becomes complete and perfect.
To illustrate: Suppose a resident of New York City takes out a policy of insurance on property owned by him in New Orleans, and *930 the agreement is that the risk is to commence instantly on the issuing of the policy. The entire contract having been made in New York, the assent having been given there and the contract completed,, the risk is only an agreement or stipulation in the contract. So that the stipulation in the open policy, that the risk is to commence from-a certain time in New Orleans, does not make the contract a Louisiana contract.
The original policy and the special insurances effected under it, are New York contracts, as the policies were issued from the domicile of the foreign corporation and assented to there. Claflin vs. Meyer, 41 An. 1048. We have decided that a foreign insurance company, which issues policies directly from its .domicile, who has no agent here, and who only agrees to accept risks placed for them by a person residing here, can not be compelled to pay a license. New Orleans vs. Rhenish Lloyds, 31 An. 781.
The Atlantic Mutual Insuranoe Company, not having done any business in this State, the defendant can not, even under the pro - visions of Act 150 of 1890, Sec. 7, be considered as its agent.
That part of Sec. 7 of Act 150 of 1890, quoted above, constitutes, the person making these special contracts of insurance, under an-open policy, the agent of the company, as though he had been duly appointed by law. If snoh is the effect of the act, and the agent thus appointed becomes the agent of the company, upon what principle can he be made personally liable for the debt of the principal ?
“A clear distinction exists in law as well as in fact, and must be observed by courts, between the business of an insurance agent and that of a person or firm or corporation, conducting or doing an insur- • anee business.” State vs. Woods, 40 An. 175; 31 An. 781; 33 An. 11.
If the defendant is liable at all, it is because of his agency for an insurance company domiciled out of .the State.
We think it is within the power of the General Assembly to declare what acts of a party in issuing, or procuring the issuing of insurance policies may constitute him an insurance agent, and subject him to the license required of such agents. But after defining his occupation it is not within its power to make him personally liable-for the license of a foreign corporation whose business he undertakes. The business of an insurance agent is a separate and individual industry or occupation and only taxable as such. 31 An. 781.
In the case of State vs. Woods, 40 An. 177, this Oourt said: “ The *931 attempt of the State, by means of this proceeding, is to make them personally liable for the license which is contemplated for the companies or corporations which they represent, and to subject their own property to the privilege, created in favor of the State, against the property of the parties who may owe the license provided by the-statute.
“Such a proposition - finds no sanction in reason or justice, and much less in the very law under which the proceeding has been instituted.” '
In that case the proceedings were instituted against certain insur-' anee agents to make them liable for licenses for' conducting an insurance business. The licenses exacted were for the amount of business done by the corporations in this State which they represented.
The suit was instituted under the provisions of Act 101, Sec. 7, of 1886, which are identical with those of Act 150 of 1890, Sec. 7, except the proviso in the latter act. The present proceedings in effect-are the same, as in that suit, to make the agent responsible as one who conducts an insurance business. . No law can make a person answerable for a debt which he does not owe. The defendant does not do an insurance business, and he can not be made to pay a license for that occupation. The Constitution, Art. 236, requires the-foreign corporation, which desires to do a business in this State, to appoint its own agent, therefore the Legislature can not appoint one for it.
It is safe to say that the Legislature can not appoint an agent for an insurance company to represent said company, for any particular purpose, as its legally appointed agent in violation of Art. 236 of the Constitution. We do not mean to be understood that the Legislature can not designate persons who transact the business of a corporation domiciled out of the State, and having no agent here-as proper persons upon whom process may be served. Nor do we wish to be understood to announce, that the State is powerless to prevent the evil attempted to be suppressed by Sec. 7 of Act 150 of 1890.
The right to prohibit foreign corporations from doing business in the State, unless they comply with its regulations, can not be denied, and this right carries with it the power to enforce the prohibition by appropriate legislation. Moses vs. State, 3 So. Rep. 140.
*932 The State can, therefore, prohibit its own citizens from conducting the business of taking out an open policy covering special contracts of insurance in a foreign insurance company, which has not complied with constitutional and statutory regulations, as it has the exclusive right, by virtue of its sovereignty, to regulate the conditions, capacity and state of all persons within it; the validity of contracts and other acts done within its limits; the resulting rights and duties growing out of those contracts and acts, and the remedies and modes ■of enforcing justice, and subjection to its will. Story Oonf. Laws, paragraph 18.
Judgment affirmed.