Argued January 14, reversed with directions March 24, costs taxed May 26, 1925.

## A. W. WALKER *v.* FIREMAN'S FUND INSURANCE CO.

(234 Pac. 542.)

**Appeal and Error—Verdict of Jury Conclusive as to Truth of Plaintiff's Testimony.**

1. Verdict of jury for plaintiff *held* conclusive as to truth of his testimony, although apparently strongly contradicted.

**Insurance—Each Covering Note Under General Open Policy Insuring Cars Against Fire Held Individual Policy.**

2. Where so-called open policy insuring a number of cars against fire contained no valuation of property insured, valuation and description of each being contained in individual covering notes

---

1. See 2 R. C. L. 193.
2. See 14 R. C. L. 939.

114 Or.—35

attached to policy, each such note would appear to be separate contract of insurance, being binding only on payment of premium and issuance of note.

**Insurance—Statement of Material Fact, in Written Application, Construed as Warranty.**

3. Where written application for insurance states material fact to be absolutely true, it will be construed as warranty, on theory that it is express stipulation of parties.

**Insurance—Doctrine of Implied Warranties Seldom Extended to Fire Insurance Policies.**

4. Doctrine implying warranties not specifically stipulated as such by the parties will be infrequently extended to cases arising under fire insurance policies.

**Insurance—Distinction Between Breach of "Warranty" and "False Representation," Stated.**

5. In law breach of "warranty" voids a contract irrespective of its gravity; while "false representation" will void it only when made with knowledge of its falsity, or recklessly without any knowledge as to whether it be true or false, and when it is of such a nature as would reasonably tend to influence insurer in accepting or declining risk or fixing amount of premium.

**Insurance—Insured not Liable for Mistaken Representations of Insurer's Agent.**

6. Where all the automobiles of insured were covered by open policy, requiring issuance of covering note describing each car so covered, insured, who merely called attention of insurer's agent to particular automobile to be insured, *held* not responsible for mistaken representations of agent in describing automobile.

**Insurance—Misrepresentations of Insured to Agent of Insurer Who Examined and Described Property Held not to Void Policy Except for Bad Faith.**

7. Where property to be insured was examined by agent of insurer, misrepresentations by insured as to value of property, unless made in bad faith, *held* not to render policy void, although amount of loss to be paid in case of destruction might be affected.

**Insurance—Local Agent not Assumed to be Working on Commission Rather Than Salary.**

8. Local insurance agent will not be assumed to be working on a commission, rather than salary, in absence of any evidence.

**Insurance—Local Agent Acting Within Scope of Authority in Examining Automobiles to Ascertain Value and Year Model.**

9. Local insurance agent in examining automobiles to ascertain value and year model, preliminary to securing issuance of covering

---

3. See 14 R. C. L. 1030.

5. Distinction between warranty and representation, see note in 4 Ann. Cas. 255. See, also, 14 R. C. L. 1027.

6. See 14 R. C. L. 1021.

9. See 14 R. C. L. 1158.

note under general open policy on all cars of insured, *held* acting within scope of authority.

**Insurance—Overvaluation of Automobiles by Owner not Necessarily Evidence of Fraud.**

10.   That owner, in insuring second-hand automobiles, appraised them at greater value than witnesses for insurance company or jury did, *held* not necessarily evidence of fraud.

**Insurance—Material Misrepresentation as to Any One of Many Cars, Insured, Would Defeat Recovery Only for That One.**

11.   Under general open policy on many cars, each car being described in a covering note which constituted individual contract as to that car, material misrepresentations of insured concerning any car would defeat recovery only as to that one.

**Insurance—Proof Showing Cars Insured to have Been Different Year Model Than Alleged Held not Material Variance.**

12.   Where agent of insurer examined cars and assessed their value, proof that they were of a different year model than described either in coverage or complaint *held* not material variance from pleading, as insurer could not have been misled.

**Insurance—Failure to Inform Agent That There was Paid Mortgage on Records Held not Fraudulent Concealment so as to Void Policy.**

13.   Failure to inform insurance agent that there was paid mortgage against cars to be insured which had not been canceled on the records *held* not such fraudulent concealment as to void policy.

**Insurance—Place of Storage of Insured Cars not Misrepresented, Though Removed.**

14.   Where owner of insured cars properly represented place of storage, but later was obliged to move, such representation *held* not to void policy, where change was not shown to have been made with fraudulent intent and where it was known to insurer's agent.

**Insurance—Evidence Casting Suspicion on Insured as to Origin of Fire not Admissible Under Pleadings.**

15.   Where insured in proof of loss stated that origin of fire was unknown and there was no pleading imputing knowledge to him, evidence casting suspicion on him as to origin of fire *held* not competent, as such facts should have been pleaded as affirmative defense or as fraudulent concealment of material facts.

---

10.   See 14 **R. C. L.** 1050.

11.   Severability of insurance in same policy, see notes in 19 **L. R. A.** 211; 51 **L. R. A. (N. S.)** 1047. See, also, 14 **R. C. L.** 939.

12.   See 14 **R. C. L.** 1048.

13.   Effect on insurance of mere failure to disclose encumbrance on property, see note in 28 **A. L. R.** 801. See, also, 14 **R. C. L.** 1061.

14.   See 14 **R. C. L.** 1114.

15.   See 14 **R. C. L.** 1438.

**Insurance—Representations in Covering Notes, Issued in Connection With Open Policy on Number of Cars, Held not "Warranties."**

16.   Under general open policy on cars, which need not be standard policy under Section 6342, subdivision 3, Or. L., where description was contained in covering notes, representations therein *held* not "warranties," there being no allusion in policy to such representations; "warranty" being assertion of existing fact or condition appearing on face of policy or some paper attached thereto and made a part of it by proper reference, and also a plain assertion of the truth of a fact in connection with the subject matter of the insurance which neither party making it is permitted to deny or escape from its stipulated consequences by alleging its immateriality.

**Insurance—Falsity of Representations Inducing Issuance of Covering Slips Under Open Policy Properly Submitted.**

17.   Under general open policy on many cars, each one of which was described in separate covering note which was written up and signed by insurer, submission to jury of only alleged false representations of insured, in securing issuance of notes, *held* proper, where insurer itself wrote up notes containing alleged false representations.

**Estoppel—Estoppel in Pais must be Specifically Pleaded.**

18.   Estoppel *in pais*, or equitable estoppel, must be specifically pleaded.

**Pleading—Omission of Material Issue may be Cured in Answer and Reply.**

19.   Omission of material issue from pleading, where made in answer and reply, will be cured.

**Pleading—Pleading in Reply an Estoppel Which Should have Been Set Out in Complaint Held Sufficient After Verdict.**

20.   Where insurance agent misrepresented facts in application to insurer, and insured failed to allege that it had no knowledge of mistake when agent committed it, reply, which was in effect a plea of estoppel and which should have been pleaded in complaint, but not moved against, might be considered sufficient after verdict; so that evidence, introduced thereunder without protest, could not be objected to.

**Insurance—Evidence That Coverage Slips were Made Out by Insurer's Agent Admissible Under Denial.**

21.   Where insurer alleged misrepresentations in coverage slips as to cars insured, evidence that slips were made out by insurer's agent *held* admissible under denial of misrepresentations.

---

16.   See 14 R. C. L. 1026.
18.   See 10 R. C. L. 842.
19.   See 21 R. C. L. 492.
20.   See 21 R. C. L. 614.
21.   See 14 R. C. L. 1438.

Insurance—Insured Should not be Compelled to Anticipate Defenses of Fraudulent Misrepresentation or Concealment of Facts Material to Risk.

22.   Insured should not be compelled to anticipate defenses of fraudulent misrepresentation or concealment of facts material to risk, so as to require plea of estoppel in complaint.

Insurance—Evidence That Misstatements in Proof of Loss were Made With Consent and Knowledge of Insurer Incompetent Where not Pleaded.

23.   Evidence that misstatements made in proof of loss were with consent and knowledge of insurer *held* improperly admitted, where not pleaded.

Pleading—Amendment of Complaint at Trial to Include Attorneys' Fees, Error.

24.   Amendment of complaint at trial so as to include count for attorneys' fees under Section 6355, Or. L., *held* error, where complaint was filed less than eight months after proof of loss, although trial was more than year afterward, as this introduced new cause of action on covenants of policy, which did not exist when original complaint was filed.

Pleading—Count for Attorney's Fees Should have Been Introduced by Filing Supplemental Complaint.

25.   Where complaint was filed less than eight months after proof of loss, though trial was year afterward, count to include attorney's fees under Section 6355, Or. L., should have been introduced by filing supplemental complaint, rather than amendment at trial.

---

See (1) 4 **C. J.**, 844, 857.   (2) 28 **Cyc.** 50 (1926 Anno.).   (3) 32 **C. J.** 1274, 1283.   (4) 32 **C. J.**, 1274 (1926 Anno.).   (5) 32 **C. J.** 1287, 1288, 1293.   (6) 28 **Cyc.** 50 (1926 Anno.).   (7) 28 **Cyc.** 50 (1927 Anno.).   (8) 28 **Cyc.** 50 (1926 Anno.).   (9) 28 **Cyc.** 50 (1926 Anno.).   (10) 28 **Cyc.** 50 (1926 Anno.).   (11) 28 **Cyc.** 50 (1926 Anno.).   (12) 28 **Cyc.** 50 (1926 Anno.).   (13) 28 **Cyc.** 50 (1926 Anno.).   (14) 28 **Cyc.** 50 (1926 Anno.).   (15) 28 **Cyc.** 50 (1926 Anno.).   (16) 32 **C. J.** 1273, 1292, 1293; 28 **Cyc.** 50 (1926 Anno.).   (17) 28 **Cyc.** 50 (1926 Anno.).   (18) 21 **C. J.** 1242.   (19) 31 **Cyc.** 714.   (20) 31 **Cyc.** 714.   (20) 31 **Cyc.** 769.   (21) 28 **Cyc.** 50 (1926 Anno.).   (22) 33 **C. J.** 83.   (23) 33 **C. J.** 101.   (24) 31 **Cyc.** 412.   (25) 31 **Cyc.** 503.

From Jackson: F. M. CALKINS, Judge.

Department 1.

This is an action brought to recover on two insurance policies issued by the defendant upon certain

---

22.   See 21 R. C. L. 491.
23.   See 14 R. C. L. 1438.
24.   See 21 R. C. L. 579.
25.   See 21 R. C. L. 503.

automobiles in the commercial garage of the plaintiff. The two policies are similar in character, and a copy of one here follows:

"Policy No. 238702.                    Form No. 2.

"Fireman's Fund Insurance Company,
        "Home Office, San Francisco,

"In consideration of the warranties and the premium hereinafter mentioned does insure

"The Assured named and described herein upon the body, machinery and equipment of the automobile described herein while within the limits of the United States (exclusive of Alaska, the Hawaiian Islands and Porto Rico) and Canada, including while in building, on road, on railroad car or other conveyance, ferry or inland steamer, or coastwise steamer between ports within said limits, for the term herein specified, and to an amount not exceeding the amount of insurance herein specified, against direct loss or damage caused while this policy is in force, by the perils specifically insured against.

"Amount—$ Various.     Rate—1.60.     Premium—
                        $ Various.

"Name of Assured—A. W. Walker Auto Company.

"Address of Assured—Medford, Oregon.

"The term of this policy begins at noon of the 24th day of January, 1921, and ends at noon on the 24th day of January, 1922, standard time

"Amount of Insurance—Various, to be specified in covering notes hereunder —— Dollars ($——).

"Warranties.

"The following are statements of facts known to and warranted by the Assured to be true, and this policy is issued by the Company relying upon the truth thereof.

"1. Assured's occupation or business is
Dealers

"2. The following is the description of the automobile:

| "Model<br>Year | Trade<br>Name<br>Various, as<br>per<br>schedule. | Type of<br>Body | Factory<br>Number | List<br>Price | Advertised<br>Horse-power |
|---|---|---|---|---|---|

"3. The facts with respect to the purchase of the automobile described are as follows:

| "Purchased by<br>Month | Year | the Assured<br>New or Sec-<br>ond Hand | Actual cost to<br>Assured includ-<br>ing equipment.<br>See above. | The Automobile<br>described is fully<br>paid for and is<br>not mortgaged or<br>otherwise encum-<br>bered, except as<br>follows: |
|---|---|---|---|---|

"4. The uses to which the automobile described are and will be put to are

"5. The automobile described is usually kept in public garage, located at 29 South Grape Street, Medford, Oregon.

"This policy is made and accepted subject to the provisions, exclusions, conditions and warranties set forth herein or indorsed hereon together with such other provisions, exclusions, conditions or warranties as may be endorsed hereon or added hereto, and upon acceptance of this policy the Assured agrees that its terms embody all agreements then existing between himself and the Company or any of its agents relating to the insurance described herein, and no officer, agent or other representative of this company shall have power to waive any of the terms of this policy unless such waiver be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the Assured unless so written or attached.

"Provisions required by law to be stated in this policy: This policy is in a stock corporation.

"In witness whereof, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by a duly authorized agent of the Company.

"J. B. LEVINSON,
"President.

"A. W. FALLANSBEE, Jr.,
"Marine Secretary.

"Countersigned at Medford, Oregon, this 24 day of January, 1921.

"WHITE & TROWBRIDGE, Agents.
"By BEN J. TROWBRIDGE. * *

"Exclusions. * *

"2. It is a condition of this policy that it shall be null and void: * *

"(c) If the interest of the Assured in the property be other than unconditional and sole ownership, or if the subject of this insurance be or become encumbered by any lien or mortgage except as stated in Warranty No. 3 or otherwise indorsed hereon;

"(d) If this policy or any part thereof shall be assigned without the consent of this Company indorsed hereon or in case of transfer or termination of any interest of the Assured other than by the death of an Assured, or any change in the nature of the insurable interest of the Assured in the property described herein, either by sale or otherwise. * *

"Conditions. * *

"Misrepresentations and Fraud. This entire policy shall be void if the Assured or his agent has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the Assured or his agent shall make any attempt to defraud this Company either before or after the loss. * *

"Fireman's Fund Insurance Company,
"Dealer's Open Policy—A.
"(Passbook or Certificate Form.)

"1. This insurance to attach and cover upon automobiles, owned and for sale by the Assured, consisting principally of automobiles known by the trade name of—Various—, including bodies, chassis, tops and other equipment attached to or forming part of such automobiles.

"2. Subject to all the conditions of this policy, loss, if any, payable to Assured as interest may appear.

"3. No risk to be declared after the date of termination of this policy, but the policy as to its condi-

tions governing declarations made, shall remain in force as to any entry declared prior to the said date until such entries have been cancelled or shall terminate.

"4. This insurance subject to the conditions and limitations of the policy of which this form is a part covers such automobiles from the time they become the property of the Assured and continues (unless cancelled) until said property is delivered to the purchaser or until same otherwise passes out of the possession of the Assured, this period in no event to exceed twelve months or to extend beyond 12 months from date of declaration. * *

"6. The object and intent of this policy is to cover subject to conditions herein contained every automobile, owned and for sale by the Assured, therefore all such risks with their storage locations shall be reported to this Company as soon as known to the Assured and a corresponding entry made in a passbook provided for this purpose, or a certificate issued hereunder, and such passbook or each certificate issued hereunder is hereby made a part of this policy. This policy shall cover, under the terms and conditions contained herein, every automobile, owned and for sale by the Assured, who, by the acceptance of this policy expressly covenants and agrees to report to the Company each automobile so owned and for sale by him and its storage location in the manner provided herein, and to pay the premiums due hereunder with respect to the same; failure to so report any such risk shall render this insurance void as to such automobile or automobiles not reported. It is further agreed that the Company, through its duly authorized agent and at all reasonable times, shall have access to the Assured's books and records for the purpose of determining the automobiles which should be insured hereunder, their storage locations and premiums which should be paid with respect thereto, and that any evasion or attempted evasion by the Assured in the matter of reports of automobiles, their storage locations or payment of pre-

miums hereunder shall void this policy, and all insurances hereunder, and shall be an absolute defense to any suit or action brought under this policy. * *

"11. This insurance does not cover the property, insured hereunder while in any building or premises owned, occupied or controlled by the Assured as a factory or place of manufacture, but this shall not be taken to refer to salesrooms or garages.

"12. This Company is not to be liable for any damage to or loss of the property insured hereunder while being operated in any race or speed contest nor during a period of twenty-four hours immediately preceding or following any such race or speed contest.

"13. It is a condition of this policy that the automobiles hereby insured will not be used for carrying passengers for compensation or rented, or leased during the term of this policy, and in the event of violation of this condition, this policy shall immediately become null and void as to the automobile or automobiles so used. * *

"16. The terms and conditions contained in this form supersede anything to the contrary printed in the policy to which this form is attached.

"This slip is attached to and forms a part of Policy No. 238702 of the Fireman's Fund Insurance Company.

"Dated at Medford, Oregon, the 24th day of January, 1921.

"WHITE & TROWBRIDGE, Agents."

No amount was mentioned in the policies themselves, but each car is specifically described in a separate covering note, or certificate, a copy of one of which follows here:

"Copy for Assured.   No. 53730.

"This Covering Note is issued in conjunction with and subject to all the terms and conditions of Dealers' Open Policy No. 238702 of the Fireman's Fund Insurance Company.

"Name of Assured—A. W. Walker Auto Co.

"Place of storage—29 S. Grape, Medford.

"Amount—$300.00   Rate—$1.60.   Premium—$1.00.

"Model Year—1916.   Trade name, Overland.

"Type of body, Tour.   Car Number, Factory, 511544.   List price, $750.   New or second-hand—2nd.

"This Covering Note takes effect on the 25 day of January, 1921, and continues in force for a period of 60 days unless previously cancelled.

"FIREMAN'S FUND INSURANCE COMPANY.

"By WHITE & TROWBRIDGE.

"Dated at Medford, Oregon, Jan. 25th, 1921."

The complaint contains two causes of action, one on policy No. 238702, a copy of which is above, and the other on policy No. 238699. Under the first policy and the covering notes injury to seventeen cars is alleged, and the second cause of action alleges injury to a tractor and motor-truck, giving the year models and descriptions as shown in the covering notes, and with other allegations sufficient to show the liability of the insurance company for the loss.

The insurance company answered, denying generally that they had issued insurance on the automobiles excepting as should he thereinafter stated in the answer, and set up a separate answer in which they alleged false and fraudulent representations as to the year models of twelve of the atuomobiles which it was claimed were covered by the first policy, and like fraudulent representations as to the year models and age of the tractor and truck covered by the second policy. Defendant also answered that plaintiff had fraudulently concealed from defendant the fact that several of the automobiles were under mortgage, claiming the benefit of the clause of the policy which rendered it void in case of such fraudulent concealment or misrepresentation, which the answer classes as warranties, as well as representations.

Plaintiff filed a reply, denying any false representations as to the age of the automobiles, and denying that he made any representations whatever, but alleged that the defendant's agent who took the insurance personally examined the cars from time to time as covering notes were issued upon them, made his own descriptions as to the year models, placed his own valuation upon the cars, which plaintiff assumed to be correct; and alleged that, if there was any discrepancy as to the year models, it was caused by defendant's agent and without the knowledge of plaintiff. There was no demurrer to the reply, and upon these issues the parties went to trial. There was a verdict for plaintiff for $8,575.25, and attorneys' fees of $800, with costs, and the defendant appeals. Many errors are alleged and urged in the brief and these will be noted in the opinion.

REVERSED WITH DIRECTIONS. COSTS TAXED.

For appellant there was a brief over the name of *Messrs. Reames & Reames,* with an oral argument by *Mr. Charles Reames.*

For respondent there was a brief over the names of *Mr. Gus Newbury* and *Mr. E. E. Kelly,* with an oral argument by *Mr. Newbury.*

McBRIDE, C. J.—The pleadings in this case are very lengthy and it is impracticable to reproduce them in this opinion. The main controversy, however, is as to the alleged misrepresentations in regard to the age of the machines covered by the policies. As a general rule, the later the model the greater value an automobile seems to have in the eyes of the purchasing public, although this is not always or necessarily true with respect to second-hand machines,

which is the case here. There is no doubt, and it is not denied, that the year model of a number of these machines was improperly stated in the covering notes. Plaintiff claims that these covering notes were made up by defendant's agent from his own examination of the machines, and that whatever errors existed in the descriptions of the machines as to the year models were made by the agent himself and for which plaintiff is not responsible.

1. On this appeal, with the verdict of the jury standing as it does in favor of plaintiff, we must assume that such testimony is true, although it seems to be contradicted, in some particulars at least, by strong testimony introduced on behalf of the defendant. Assuming, as we must, that plaintiff's statement is true, we are confronted with this state of facts: Plaintiff was engaged in the garage business in the town of Medford, Oregon, and in 1920 and 1921 took out the policies mentioned here, the general character of which is shown in the statement. There were no covering notes issued with the policy, but whenever plaintiff would purchase a car he would inform the agent of that fact and the agent would come personally, examine the car, make his own description and put his own valuation upon it, which description and valuation appeared in the covering note, or certificate, which the agent issued, or ought to have issued, to the plaintiff. Although defendant's agent had made out these covering notes and claimed the premiums as required, he had, in many instances, neglected to deliver the certificates, or covering notes, to plaintiff. They were kept in the agent's office until after the fire. The agent's authority is not shown by the testimony, but there is no question but that it was extensive enough to authorize him to examine

these cars and to issue the covering notes. If the plaintiff made no representation as to the year model, as testified, there was nothing to be waived by the agent. If the agent, mistakenly and in the course of a survey made by himself, inserted a wrong number in the covering note, there was nothing imputable to plaintiff for him to waive. There is no question of waiver in the case.

2. It is difficult accurately to state the precise nature of this form of policy. It is called an open policy, because there is no valuation in the body of the policy itself of the property insured, nor is there any property described in the body of the policy as being insured, and the amount of insurance covered by it would fluctuate from time to time as plaintiff purchased cars and submitted them for insurance or when he sold a car and withdrew it from further insurance. It would seem, in this kind of insurance, that every covering note issued upon the payment of a premium practically amounted to a separate contract of insurance, it being evident that no liability for any loss would accrue against the insurance company until the premium had been paid and the covering note issued on each car so insured. Authorities upon this subject seem to be meager, but the logic of the situation would seem to indicate that this should be the rule, and the following decisions tend strongly to sustain that view; *State* v. *Williams,* 46 La. Ann. 922 (15 South. 290); *Douville* v. *Sun Mutual Ins. Co. of New York,* 12 La. Ann 259; *Wright* v. *Fire Ins. Co.,* 12 Mont. 474 (31 Pac. 87, 19 L. R. A. 211, 28 A. L. R. 802, note).

3, 4. The question is generally discussed in the briefs as to whether the representations as to the year models of the cars constitute warranties. In

the bodies of the policies certain matters are spoken
of as warranties, but as no car is described in the
policies themselves, it is impossible to find any war-
ranty in those instruments unless we import into
them the description in the covering notes and call
them warranties. The peculiar manner in which
these people did business and under which these
policies were issued differentiates this case from
many cases in which a written application for a policy
is made and signed by the person desiring insurance.
It has been frequently held that, where a written
application states a thing absolutely to be true, and
such statement is of a material fact, it will be con-
strued as a warranty, even if the fact should not
be material, and this is upon the theory that as both
parties have agreed that it should be a warranty,
the courts will not disregard a contract to that effect
and hold what the parties have thus stipulated to be
a warranty to be a mere representation. But courts
are loath to hold that to be a warranty which the
parties have not stipulated shall be such. And, except
in policies of marine insurance, where the doctrine
of implied warranties is to a certain extent accepted,
such doctrine is reluctantly and infrequently applied
in cases arising upon fire insurance policies.

5. The difference in law between a warranty and
a false representation is that breach of a warranty
voids the contract, irrespective of its gravity, while
a false representation will only void the contract
when it is shown to have been made by the party
claiming the benefit of the contract and made either
with knowledge of its falsity or recklessly, without
any knowledge as to whether it was true or false,
such representation being of a nature that would rea-
sonably tend to influence the action of the insurer in

accepting or declining the risk or in fixing the amount of the premium to be paid.

6. In this case, as before stated, there was no written application for a policy. There was no written application for a covering note, which note was necessary to make the policy effective for the protection of each automobile concerning which it was issued. According to plaintiff's testimony, he made no false representations, in fact, no representations whatever beyond calling the attention of defendant's agent to the particular automobile he wished insured. Under such circumstances we do not think that he should be held responsible for mistakes made by defendant's agent: *Koshland* v. *Hartford Ins. Co.,* 31 Or. 402 (49 Pac. 866); *Northwestern Nat. Ins. Co. of Milwaukee, Wis.,* v. *Chambers,* 24 Ariz. 86 (206 Pac. 1081); *Wright* v. *Fire Ins. Co., supra;* Cooley's Briefs on the Law of Insurance, Vol. 2, p. 1140, and cases there cited.

7. It is true that the difference in the age of the cars might affect the amount of insurance which defendant would choose to place upon them, although this is not necessarily the case, as a carefully used and conservatively driven car of the year model of 1918 might in fact be more valuable than a car of the same make of the 1921 model which had been carelessly or recklessly used. At all events, we think the authorities hold quite generally, in cases of this kind, where the examination is made by the agent of the insurer and the description of the property to be insured, and its value, are made by such agent, that any representation made by the person desiring insurance as to the value of the property, unless made in bad faith, could not be held to be such a misrepresentation as would render the policy void, al-

though it might affect the amount of loss to be paid in case of the destruction of the property: *Wright v. Fire Ins. Co., supra.*

8, 9. It would, of course, be grossly unjust if the plaintiff fraudulently misrepresented the age of his automobiles, or their value, in order to get an increased insurance upon them, to allow him to recover anything. On the other hand, it would be equally unjust, if the defendant's agent assumed the duty of examining the cars and ascertaining their year models and values, and, having done so and issued covering notes and taken the premium from the insured, that the insurance company should be heard to say, "Our agent insured your cars for more than they were worth, describing them as newer cars than they were, and, after having had the benefit of a greater premium than we would otherwise have received, we will keep that premium and pay you nothing on account of your loss." So long as the automobiles were not burned, the insurance company was making money by reason of the fact that the cars were valued higher than they would have been if the agent had placed a lower valuation upon them. If the agent was one working upon a commission on premiums, he would probably be the principal one to profit by a higher valuation, because the premium would be larger, but in the absence of testimony we cannot assume as a fact that he was working upon a commission rather than upon a salary, although it is probable that he was a mere local agent, working upon a commission. In examining the automobiles, ascertaining their value and year model, and other matters incident to the risk, he was acting within the scope of his authority, which, on that subject, is not limited by anything in the policy:

114 Or.—36

*Northwestern Nat. Ins. Co. of Milwaukee, Wis.,* v.
*Chambers, supra.*

10. We find no error in the court's ruling upon the
subject, and the verdict of the jury has settled the
question as to whether plaintiff made any material
misrepresentations. In fact, if plaintiff's testimony
is to be believed, he made no representations except
that he had purchased a car which he wished de-
fendant's agent to examine and insure. Representa-
tions as to the value of a car are so largely a matter
of opinion that it is difficult to predicate fraud in
a mere appraisal of value. We find here nearly
every witness disagreeing as to the value of the cars,
and the jury, by its verdict, disagreeing with the wit-
nesses. There is a tendency in the average human
mind for a man to overvalue his own possessions.

"It is naught, it is naught, saith the buyer: but
when he is gone his way, then he boasteth."
Proverbs, xx, 14.

In other words, every man who makes a trade
thinks that he is getting a good bargain, and it is
not necessarily an evidence of fraud that the plain-
tiff thought his automobiles of greater value than
defendant's witnesses appraised them or that the
jury found.

11. The court properly instructed the jury to the
effect that if they found that plaintiff had misrepre-
sented any car included in his covering notes or made
any material misrepresentation, the jury should allow
him nothing on that car, and on the theory that each
covering note practically constituted a new contract
this was correct. There were just as many policies
as there were covering notes, as a matter of law.
The contract of insurance was never completed until
the covering notes were signed by defendant's agent.

When that was done there arose at once the legal liability on the part of plaintiff to pay the premium, and on the part of the defendant to pay the loss if a car was destroyed. And if plaintiff recklessly, or even fraudulently, or through motives of greed, overvalued a particular car, the policy, as to that particular car, became void.

12. A great deal was said about the moral risk that entered into these contracts of insurance, but we know, in actual practice, that insurance companies are not prone so much to inquire about the moral standing of a person as about the nature of his property and the amount of premium they can receive for insuring him. While they say that they would not have insured this property if they had known that plaintiff was making these misrepresentations as to year models and value, we apprehend that if the year models had been correctly stated in every instance, while they might not have valued the cars so highly, they would, nevertheless, have insured them at some sum. But that is beside the question here, because from plaintiff's evidence it appears that he made no representations whatever, and that defendant's agent placed the valuations, fixed by his own inspection— either from a careful or careless examination of the machines does not appear.

There can be no question but that plaintiff intended to have insured the particular cars shown to or reported to the agent, and that the agent intended to insure and include in the covering notes, among others, the identical cars that were injured in the fire. The year model was a part of the description, but, in view of the examination made by the agent, it could have had little or no influence upon his mind in determining the value. This error in the descrip-

tion, either in the coverage or the complaint, could not have misled the defendant to the extent of being a material variance between the pleading and proof.

13. Another objection urged is that plaintiff concealed the fact that some of the automobiles were mortgaged. The covering notes indicate that he reported the fact to the company that two of the cars were mortgaged, and, in fact, the insurance on the covering slips was for the benefit of the mortgagee. As to the others, plaintiff's testimony indicates that while the mortgage had not been satisfied of record, it had actually been paid and discharged, so that, while there was apparently a mortgage upon them, none existed in fact. Failure to inform the agent that there was a paid mortgage on the records which had not been canceled was not such a fraudulent concealment as ought to exonerate defendant from paying the policy.

14. It is urged that the plaintiff misrepresented the place of storage of the machines, and that this representation renders the policy void. The evidence indicates that the machines were actually in the building described in the policy as their usual place of storage when the policy was issued. Later the owner of the building required it for other purposes and plaintiff was compelled to remove to another location. The representation disclosed in the policy was strictly true. There was no representation or promissory warranty that the machines would always be kept in the same building. The change was known to defendant's agent and is not shown to have been made with any fraudulent intent. In fact, a majority of the covering notes in evidence were issued after the change of location and the

new location is specified in them.  The contention is without merit.

15. In his proof of loss the plaintiff stated that the origin of the fire was unknown.  There was no sufficient pleading on the part of the defendant that the plaintiff set the fire, or caused it to be set, or that he knew the origin of it.  The defendant offered testimony tending to show that there was a stove in the garage which was burning at the time of the accident and that near it were deposited cans of oil and other inflammable material, and generally sought to introduce testimony casting suspicion upon the plaintiff as to the origin of the fire.  If defendant desired to charge plaintiff with having set the fire or having caused it to be set, or having knowledge of its origin which he fraudulently concealed, such facts should have been pleaded as an affirmative defense, or as a fraudulent concealment of a material fact.  In the absence of such a pleading the evidence offered was not competent for any purpose.  The allegation in the answer under which the testimony was offered is as follows:

## "XXI.

"And that as to the allegations of paragraph XXIII of the first cause of action, wherein the plaintiff alleges that the origin of the fire alleged in the complaint is to the plaintiff unknown, this defendant alleges that just prior to said fire the plaintiff moved the second hand cars described in said first cause of action into a building other than the one in which new cars and automobile supplies were kept by plaintiff for sale, and although the plaintiff at all times was required to exercise reasonable care to prevent loss to said cars by fire, he nevertheless stored in the same room with said cars large quantities of inflammable oil and installed near said oil a heating

stove in which stove the plaintiff had made or caused
to be made a fire on the evening of the night on
which said fire occurred, and the said fire had its
origin in that part of the said room in which said
oil and stove were. And at the time of the taking
out of the insurance sued upon herein the plaintiff
was heavily involved financially and had on hand an
unusually large number of used cars of little value,
and he failed to disclose to the defendant his finan-
cial condition or the fact that many of said cars were
mortgaged. And in said proofs of loss so sworn to
by the plaintiff the plaintiff stated that the origin of
said fire was to him unknown, and did not disclose
the existence of the said oil in the building where
said cars were, nor the existence of the fire in said
stove, nor did he disclose any of the other matters
herein alleged.''

A mere reading of the above will disclose how far
short it comes from alleging that plaintiff actually
knew the origin of the fire and lied about it in his
proof of loss. Every fact stated in the answer could
be true and yet plaintiff's statement in the proof of
loss could be true. He was not required to state his
guesses or suspicions or speculations, but to answer
truly as to whether or not he actually knew the origin
of the fire. The whole paragraph quoted is adroitly
framed to cast the shadow of suspicion on plaintiff
without in fact charging him with crime.

16, 17. Several objections to the court's instruc-
tions are predicated upon the theory that the state-
ments in the covering notes are warranties, and,
while this subject has already been referred to, its
importance here renders it not improper further to
discuss it. A warranty in a fire insurance policy is
a plain assertion of the truth of a fact in connec-
tion with the subject matter of the insurance which
neither party making it is permitted to deny or to

escape from its stipulated consequences by alleging its immateriality. An affirmative warranty is one which asserts an existing fact or condition and appears upon the face of the policy or some paper attached thereto and made a part of it by proper reference. If the stipulation requires the performance of an act after the issuance of the policy, it is generally held to be a promissory warranty. It is one of the qualities of a wararnty that it should be plain and unambiguous. A policy of fire insurance should not contain a trap for the unwary. There is no allusion in the policy here under consideration to the covering notes as warranties, and the language under the head of warranties described no automobile, but contains a mere blank form—whether intended as a form to be imitated in future applications for coverage does not clearly appear. It is ambiguous both as to intent and in its language. In fact, it would appear to be that an ordinary standard policy used in other kinds of fire insurance had been rather crudely worked over to serve the purpose of an automobile insurance policy, which, by subdivision 3 of Section 6342, Or. L., need not be a standard policy. If the covering slips prepared by defendant and signed by defendant's agent are to be construed as warranties, such construction should work both ways, and the defendant should be precluded from disputing the verity of the stipulations therein contained. The real defense here is founded upon the alleged fact that plaintiff made oral representations as to the year models and age of the cars and other particulars, and thereby caused defendant to issue and sign these covering slips. In other words, it claims that the covering slips are false because plaintiff falsely and fraudulently repre-

sented the facts. The slips were not warranties by
the plaintiff, but were written up and signed by the
defendant. This opened up the whole field for evi-
dence of the alleged false representations of plaintiff
in procuring the insurance, and, upon the whole,
the matter was properly submitted to the jury.

18. Defendant objected to evidence being intro-
duced tending to show that the descriptions of the
cars, or rather, the misdescriptions, pointed out in
the defendant's answer, were the result of the mistake
made by defendant, through its agent, Trowbridge.
The bearing of this objection, so far as it relates
to a variance between the pleadings and proof, has
already been considered, but it is presented under
another guise in an objection that it is a matter of
estoppel, and should have been pleaded in the
complaint.

Plaintiff's complaint alleged that plaintiff had kept
and performed all the conditions which the policies
required him to perform with reference to the specific
automobiles described in the complaint, describing
them by the same model numbers specified in the
covering notes. The defendant denied this generally,
and, in addition, alleged that plaintiff, with intent
to defraud and deceive defendant, had fraudulently
represented a large number of the cars specified in
the complaint to be of later models than they in fact
were, and had thereby caused defendant to insure
them. Plaintiff, in his reply, denied making the
false representations, or any representations, in re-
gard to the age of the machines, and alleged that, if
any such mistakes were made, it was the fault of
defendant's agent, who examined the cars and from
such examination prepared the descriptions shown
in the coverage notes. The fact that the alleged

discrepancies existed was only denied inferentially and, with the exception of one car, was clearly proved at the trial. We quote one of the allegations in the answer, like allegations being pleaded with respect to other machines:

## "III.

"That as to the allegations of paragraph IX of said first cause of action the defendant never insured the car described in said paragraph under said contract of insurance, and the defendant alleges that at the time of the making of said contract of insurance the plaintiff so fraudulently represented to the defendant that the car described in said paragraph IX was a 1917 Chevrolet roadster, whereas, in truth and in fact, as the plaintiff well knew, the same was a 1916 Chevrolet."

In a preceding allegation defendant had pleaded that the alleged false representations were made with intent to deceive defendant and did deceive it, and were the cause of its entering into the contract. The reply denied the existence of the alleged discrepancies and thereafter continued as follows:

"And, for a further and separate reply to defendant's further and separate answer to the plaintiff's first cause of action, plaintiff alleges:

## "I.

"That the defendant, before issuing covering notes covering the cars mentioned and described in plaintiff's said first cause of action, inspected said cars and after an inspection of the same issued covering notes, covering said cars, and that if there was any mistake either as to the motor number, condition of cars, or the year in which the same were manufactured, it was a mistake and error of the defendant company, and that plaintiff in no wise made any mis-

representations to defendant with reference to said cars, or any thereof.

"II.

"Plaintiff further alleges that if there was any mistake in the motor number or the year of manufacture of any of said cars, that the identical car or cars for which covering notes were given by defendant company were given after an inspection of the same for the purpose and intention of covering the identical car or cars, irrespective of its or their motor number or the year of manufacture; and that the cars mentioned and described in plaintiff's complaint under the name of the individual car had corresponding covering note issued and delivered by the company, as in plaintiff's complaint alleged, and after an inspection duly had by defendant."

19–21. The defendant urges the objection that evidence of the fact that the coverage slips were made out by defendant's agent was matter of estoppel, and should have been pleaded in the first instance in the complaint, and was improperly pleaded in the reply and constituted such a departure from the facts pleaded in the complaint as to render such evidence inadmissible. Contrary to the prevailing rule in most jurisdictions, it has been held here that estoppel *in pais,* or equitable estoppel, should be specially pleaded, and this rule is now so firmly established by judicial decisions in this state that it is impracticable to attempt to overturn it, but it does not follow that an estoppel *in pais* should be pleaded with that nicety and attention to form that applies to the pleading of a technical estoppel. It is sufficient if the substantial facts that indicate that the opposite party should not be permitted to avail himself of a particular fact, or act, or omission should appear in the pleading. But it is equally true that where a material issue has been omitted from a

pleading, an issue on such fact, made in the answer and reply, will cure the defect: *Treadgold* v. *Willard,* 81 Or. 658 (160 Pac. 803); *Easton* v. *Quackenbush,* 88 Or. 374 (168 Pac. 631). Had the facts stated in the reply here been alleged in the complaint, while the allegation would have been subject to a motion to make it more definite and certain, it would certainly have been good in the absence of such a motion. The pleading is technically defective in not alleging that plaintiff had no knowledge of the alleged mistake when the agent committed it. It is a somewhat crude attempt to plead an estoppel, but, not having been moved against and the evidence admitted without objection, it should be held sufficient after verdict. Besides this, taking into consideration the fact that plaintiff had denied making any misrepresentations in regard to the models or conditions of the cars, the evidence was admissible under the issue thus raised.

The pleadings here seem to have followed closely the pleadings in *Koshland* v. *Hartford Ins. Co.,* 31 Or. 402 (49 Pac. 866), and the point raised here was expressly raised in the brief of Chamberlain & Thomas, attorneys for the appellant in that case. At pages 57 and 58 of their brief they say:

" * * No explanation of these encumbrances was sought to be made by plaintiff in his case in chief, and upon his own theory of these cases, the effect of these encumbrances was to avoid the policy unless some explanation thereof were made. These explanations should have been made in the complaint, and in the evidence in chief, and it was too late to attempt them by reply, and by evidence in support thereof."

The question thus raised was not discussed in the opinion, but the court, by affirming the judgment,

tacitly approved the course of the plaintiff in presenting this issue in his reply.

22. In *Wright* v. *Fire Ins. Co.*, 12 Mont. 474 (31 Pac. 87, 19 L. R. A. 211), where the answer of defendant pleaded concealment of material risk, that defense was met in the reply by alleging preparation of the application for insurance by the agent of the insurer and a plea of estoppel on that account. In these cases such form of pleading would seem logical. A plaintiff should not be compelled to anticipate a defense of fraudulent misrepresentation or concealment of facts material to a risk.

No objection was made, by demurrer or motion, to the order in which the alleged estoppel was pleaded, nor was any objection interposed to the evidence of plaintiff as to his contention that the covering notes were prepared by defendant's agent pursuant to an inspection made by him of the cars. So that, while the question is not free from difficulty, we are inclined to the opinion that the verdict cured the objection here urged.

23. But this is not the case in regard to the proofs of loss. It is distinctly charged and abundantly proved that the same representations were made in these proofs, and this is not denied, nor is there any sufficient plea in estoppel as to these. The plaintiff was permitted to introduce testimony tending to show that the proofs of loss were prepared on the form they were in upon the advice and with the consent of defendant's representatives, and that both plaintiff and these representatives knew that in some respects the statements therein contained were untrue. This is particularly true with reference to a certain Hudson car, and applies in a certain degree to other cars. The defendant objected to this testimony fre-

quently and seasonably and the objections were over-ruled. Under the holding in *Mercer* v. *Germania Ins. Co.,* 88 Or. 410 (171 Pac. 412), the admission of this testimony was error and will necessitate a retrial of this case. While we hold that failure seasonably to object to testimony offered under the defective plea of estoppel as to the description and valuation of the cars saved this evidence from the condemnation of incompetency, we cannot extend a like charity to misstatements in the proofs of loss—confessedly untrue, or at least inaccurate—to which no such plea is interposed, even by implication. In a case in which a large majority of the cars are mis-described, both in the policies and in the proofs of loss, the defendant is entitled to a fairly clear explanation in the pleadings before proof is offered that such discrepancies are defendant's fault, or made at its suggestion.

24. The court erred in permitting the complaint to be amended on the trial so as to include a count for attorneys' fees. Section 6355, Or. L., provides:

"Whenever any suit or action is brought in any courts of this state upon any policy of insurance of any kind or nature whatsoever, the plaintiff, in addition to the amount which he may recover, shall also be allowed and shall recover as part of said judgment such sum as the court or jury may adjudge to be reasonable as attorney's fees in said suit or action; provided, that settlement is not made within eight months from date proof of loss is filed with the company. * * "

25. This action was instituted August 6, 1921, and eight months had not then elapsed since the filing of the proofs of loss, which proofs were filed April 7, 1921. The cause was called for trial on May 22, 1922, and an amendment alleging that $1,000 was a

reasonable sum as attorneys' fees was offered by
plaintiff and taken under advisement by the court, and
at the close of the testimony the amendment was al-
lowed, over defendant's objection. This introduced
a new cause of action on the covenants of the policy,
which did not exist when the original complaint was
filed or when issue was formed thereon. It should
have been introduced by filing a supplemental com-
plaint: 31 Cyc., p. 502.

Numerous objections are made to the instructions
of the court, and they are not entirely free from
technical criticism, but, taken as a whole, we think
they fairly present the case to the jury, except
in so far as they treat upon the subject of estoppel
as to the matters which we have held that estoppel
was not properly pleaded. There is a long record,
voluminous testimony, and the briefs here occupy
nearly four hundred pages. In such a case, as hotly
contested as this was, it can hardly be expected that
a judge will be technically accurate in every ruling,
and we regret that our view of the law requires us
to direct a new trial; but it is hoped, now that we
have attempted to blaze the path, the parties, with
perhaps amended pleadings, may be able to make a
substantially correct record.

The judgment is reversed and a new trial directed,
with leave to either party, if so desired, to apply
to the court below for leave to file amended plead-
ings supplemental or otherwise.

REVERSED WITH DIRECTIONS. COSTS TAXED.

RAND and COSHOW, JJ., concur.

BURNETT, J., concurs in the result.