Argued October 14, 1932; modified January 24; rehearing denied
February 14, 1933

## MASSACHUSETTS PROTECTIVE ASS'N, Inc., *v.* PALMER

(18 P. (2d) 585)

*G. M. Roberts,* of Medford (Wm. M. McAllister, of Medford, on the brief), for appellant.

*Arthur W. Schaupp,* of Klamath Falls, for respondent.

RAND, C. J. On April 24, 1928, the defendant applied to the plaintiff corporation for an accident and health insurance policy and stated in his written application therefor that his occupation was that of a "train conductor" for the Southern Pacific Company, and that the policy which he desired to obtain was a "14 mos. Perfection Special." No reference was made therein to the principal sum for which the policy should be issued. The application was approved and a policy of the particular kind applied for was issued and accepted and all premiums provided for therein have since been paid. The policy issued expressly stated that the principal sum was $5,000 and stipulated that that sum should become due and payable for an accident which should result in the loss of both of defendant's feet. On April 29, 1931, defendant sustained such an accident and, under the terms of the policy, the whole of said sum became immediately due and collectible.

At the time said application was made and the policy issued, defendant was the conductor of a mixed passenger and freight train and plaintiff had on file in the office of the Insurance Commissioner of the State of Oregon a rate manual and classification of risks which provided that "where the Perfection or Premier policies are issued to Class 5 risks, the principal sum will be limited to $2,500, and the rates will be those hereafter shown in this rate book for Class 5." And in the same manual a train conductor of a

freight or mixed train was rated as a Class 5 risk, while a conductor of a passenger train was rated as of Class 3.

Section 46-107, Oregon Code 1930, prohibits discrimination by insurance companies between "risks of essentially the same hazard in its application of its rates for insurance." And, because of this prohibition and said provision in said manual, plaintiff contends that it is entitled to reform the policy so as to make it provide for the payment of $2,500 for the accident sustained in lieu of the amount stated in the policy, and brought this suit for such relief upon the ground that the policy providing for payment of $5,000 was issued by mistake of a scrivener or clerk of the plaintiff. Plaintiff's main office is in Worcester, Massachusetts, and the policy was issued there and transmitted to plaintiff's state agent at Portland, Oregon, and by him to defendant. It contained certain standard provisions among which were the following:

"1. This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance. No reduction shall be made in any indemnity herein provided by reason of change in the occupation of the insured or by reason of his doing any act or thing pertaining to any other occupation.

"2. No statement made by the applicant for insurance not included herein shall avoid the policy or be used in any legal proceeding hereunder. No agent has authority to change this policy or to waive any of its provisions."

No papers were attached to the policy other than a photostatic copy of the application itself and, as issued, the policy did not contain any provision that the contract of insurance should be subject to or be in any way affected by the table of rates or classification of

risks filed with the insurance commissioner and it is neither alleged nor proven that defendant, when signing the application and accepting the policy, had ever seen said manual or knew of any of the provisions contained therein. However, our statute, section 46-801, Oregon Code 1930, among other things, provides:

"On and after September 1, 1911, no policy of insurance against loss or damage from disease or by the bodily injury by accident, or both, of the assured shall be issued or delivered in this state * * * unless it contains in substance the following provisions: * * * A provision that such policy, with a copy of the application therefor, if any, and of such other papers as may be attached to or indorsed thereon shall constitute the entire contract of insurance except as the same may be affected by any table of rates or classifications of risks filed by the corporation with the insurance commissioner. (b) * * * A provision that no statement made by the applicant for insurance, which statement is not incorporated in or indorsed on the policy issued to such applicant, shall avoid the policy or be used in evidence, and no provisions of the charter, constitution or bylaws shall be used in defense of any claims arising under any such policy unless such provisions are incorporated in full in the policy; but this requirement shall not be deemed to apply to the table of rates or manual of classification of risks of any corporation filed with the insurance commissioner prior to the date of the occurrence of the injury or commencement of the sickness for which indemnity is claimed."

Section 46-802, prohibits the issuance of any policy insuring against accidental bodily injury, disease or death if it contains, in substance, a provision limiting the amount of indemnity to be paid in a sum less than the indemnity as stated in the policy and for which the premium has been paid. It was alleged in the

complaint that at the time the application was made plaintiff's soliciting agent informed defendant that the principal sum was to be $2,500. This allegation was denied in the answer. Upon the trial of the cause plaintiff offered some evidence tending to show that such information had been furnished to the defendant by the soliciting agent when taking the application.

Defendant objected to the introduction of this testimony upon the ground that the policy itself provided that no statement made by the applicant for insurance not included in the policy shall avoid the policy or be used in any legal proceeding thereunder, and now contends that such testimony was inadmissible. It is a rule of general application that the contract as written by the parties shall be held to embody all prior and contemporaneous agreements and, therefore, that evidence of matters outside the instrument cannot be admitted to control its legal effect. If the rule were otherwise, there would be no security in written contract. But a court of equity has power to reform an instrument so that it will express the actual agreement of the parties, where there has been a mutual mistake or a mistake upon the part of one and fraud or inequitable conduct on the part of the other: *Columbian Nat. L. Ins. Co. v. Black,* 35 Fed. (2d) 571 (71 A. L. R. 128), and cases cited. But in a suit in equity brought to reform a contract upon the ground of fraud or mistake, parol evidence is admissible to establish that the contract was entered into by mutual mistake, or mistake on the part of one and fraud on the part of the other. In *Mercer v. Germania Ins. Co.,* 88 Or. 410 (171 P. 412), which it will be noted was an action at law to enforce the contract and not a suit in equity to reform it, it was held that parol evidence which

tends to modify the terms of the written contract is not admissible "unless defendant is estopped from availing itself of the portions of the contract so undertaken to be modified."

In section 2182, Couch on Insurance, the author states the rule which is applicable in a suit of this character as follows:

"Although parol evidence is admissible in a proper case to show the intent of the parties to a contract of insurance, if, by reason either of fraud or mistake, it fails to express the meaning of the parties or contains an obvious omission, or to explain a contract, where necessary to an understanding thereof, or to explain or show the meaning of technical words or phrases, or ambiguities, as well as to correct mistakes and identify the subject of the insurance, and similar matters, no rule of evidence is better settled than that, in the absence of fraud or error, parol evidence is inadmissible to vary or control the plain and unambiguous terms of a complete written contract of insurance, or to aid in its interpretations, unless the contract is incomplete in itself, or is ambiguous, either as to construction or application of the terms, or the subject, since when a policy of insurance, properly executed, is delivered and accepted, it must be conclusively presumed to contain all the terms of the agreement for insurance by which the parties intended to be bound, and, therefore, to be the final form of their binding agreement; in other words, since representations and agreements made prior to the issuing of a contract of insurance are merged therein, parol evidence will not be received to modify or change the same, in the absence of fraud or mistake of fact; at least unless the insurer is estopped to avail itself of the portions of the contract sought to be modified, or fraud or deceit has been practiced. It is, therefore, a general rule that all prior negotiations are considered as waived, or merged in the written contract, and that, in the absence of fraud, duress, or mistake, parol evidence is

inadmissible to contradict or vary its terms, since the entire engagement of the parties, with all the conditions upon which its fulfillment can be claimed, must be conclusively presumed to have been stated in the policy, so that its terms, when explicit, must control. * * *''

See note 16 L. R. A. (N. S.) 1165.

The testimony of the soliciting agent that he informed defendant that the principal sum for which this particular policy was to be issued would be $2,500 is flatly contradicted by the defendant and, upon this issue, the learned trial judge found in favor of defendant.

■ We think that his conclusion must be sustained, both by the weight of the evidence and also for the reason that the application is wholly in the handwriting of the soliciting agent except as to the signature of defendant. If the agent, when writing the application, had had in mind the distinction between the two classes of conductors and their different ratings, it is only reasonable to suppose that he would have stated in the application that defendant was the conductor of a mixed train and, hence, would come within the classification of a Class 5 risk, instead of writing, as he did, merely the words "train conductor." This case, therefore, is one where the defendant applied for a particular policy and was ignorant of the amount of the principal sum for which it was to be issued. The application contained no reference to that amount and, therefore, the defendant was not guilty of fraud either in the making of the application or, if he had no knowledge that a mistake had been made, in the acceptance of the policy.

■ Assuming, however, as contended for by plaintiff that all the provisions contained in the manual filed

with the insurance commissioner are by force of the statute incorporated into and form a part of the contract of insurance, whether defendant knew of said provisions or not, a careful examination of such manual does not show that the provision relied upon was applicable to this particular policy which was a Perfection Special and not a straight Perfection Policy. It is true that there is some evidence tending to show that the only distinction between the two policies is that the usual prorating clause is omitted from this particular policy. It was established upon the trial that, subsequent to the issuance of this policy, other policies of this particular type or form were issued to persons whose occupations brought them within Class 5 risks and were for the same amount as was written in this particular policy. There is also evidence tending to show that, after this policy had been in force for some time, defendant claimed and was allowed an indemnity benefit for illness and no claim was made by the plaintiff company that any mistake existed in this policy until after defendant sustained the injury which entitled him to payment of the whole principal sum. If there had been a mistake in the amount of the policy or, in other words, if it did not conform to the directions contained in the manual, it seems strange that plaintiff's officers and agents did not discover it at an earlier time. The evidence of the defendant is that he applied to an agent of plaintiff to have this policy changed to another form of policy and was at the time informed that the plaintiff corporation had discontinued issuing policies of this particular class where the principal sum was $5,000. These circumstances indicate to some extent at least that the principal sum named in the policy was not inserted by mistake. The policy, as stated, was prepared in the

home office. It bears the signatures of the president and secretary of the plaintiff corporation and is on a printed form in which the principal sum is printed in figures, and there is no showing that any policy of this kind was ever issued where the principal sum was stated to be $2,500.

Again, the manual shows that, nothwithstanding the provision that where the perfection or premier policies are issued to Class 5 risks, the principal sum will be limited to $2,500, a type of insurance, designated by plaintiff as the Premier "35" Policy, was authorized to be issued naming the principal sum for Class 5 risks as $3,000, and stating that such a premier policy would be issued for that sum. Again, it appears from the manual in the table of premiums to be paid for this particular class of perfection special policy, the principal sum shall be $5,000 and the rate to be paid for Class 5 risks is $95.

Under these circumstances, we cannot say that the testimony showing a mistake is of that clear, cogent and convincing type of testimony which, under all the authorities, is necessary for the reformation of an instrument upon the ground of mistake. Hence, we hold that, while there may have been a mistake, it has not been established by clear and convincing testimony. As stated by Williston, section 35:

"where a maker through confidence or neglect intrusts to a third party a blank non-negotiable bond which the latter completes by filling the blanks and delivers to an innocent obligee, the maker is bound by the terms of the completed instrument though filled out in violation of authority. * * * His liability depends rather on estoppel than on expressed mutual assent. Such estoppels have more generally been applied to negotiable paper, than to other writings, but seem fairly applicable to the latter."

We think that that rule should be applied here for the reason that the plaintiff has failed to establish mistake by clear and convincing testimony and, therefore, ought to be required to pay the amount which it is stipulated is to be paid for the accidental injury which defendant sustained.

■ Plaintiff objects to the allowance to defendant of attorney's fees. Defendant sustained his injury on April 29, 1931, and on a later date filed his proof of loss. Less than six months thereafter he filed his amended answer, praying for attorney's fees and subsequently, upon the trial of the cause, he obtained a decree awarding attorney's fees. Under the doctrine announced in *Walker v. Firemen's Fund Insurance Co.*, 114 Or. 545 (234 P. 542), he was praying for relief upon a claim which had not then accrued and later, when it did accrue, he should have filed some supplemental pleading setting forth the grounds upon which he had become entitled to such relief. This he failed to do and, therefore, under the ruling of that case, he was not entitled to be awarded attorney's fees.

For these reasons, the decree of the lower court will be modified in the allowance of attorney's fees. In all other respects it will be affirmed and it is so ordered.

BEAN, ROSSMAN and KELLY, JJ., concur.