Argued February 27; affirmed April 9, 1946

# PRUEITT *v.* SOUND CONSTRUCTION & ENGINEERING CO.

(167 P. (2d) 698)

*James G. Smith,* of Portland (Claude W. Barrick, of Tillamook, and Maguire, Shields & Morrison, of Portland, on the brief), for appellant.

*George P. Winslow,* of Tillamook (A. E. Clawson, of Tillamook, on the brief), for respondent.

BAILEY, J.  Defendant, Sound Construction and Engineering Company, a corporation, appeals from a decree of the circuit court denying to it the equitable relief which it asked, to wit, the reformation of two written releases signed by plaintiff, J. E. Prueitt.

This proceeding was instituted by plaintiff as an action at law to recover damages from defendant for injuries suffered by him while employed by the defendant in the construction of a naval lighter-than-air base at Tillamook, Oregon.  The complaint alleges that on the 5th day of March, 1943, and while plaintiff was employed by defendant in chiseling and leveling off a large concrete wall "pieces of concrete and concrete dust which had been broken off of said wall in said work hit and lodged in plaintiff's eyes; that as a direct result thereof plaintiff sustained severe, permanent and painful injuries" to his eyes; that plaintiff immediately reported to defendant's first aid station

for treatment and was there treated by defendant's representatives, who negligently failed to remove all the particles of concrete from his eyes; that plaintiff was advised by defendant to return to his work, and thereafter, while he was employed by defendant, and on or about the 2nd day of May, 1943, additional concrete pieces and concrete dust hit and lodged in plaintiff's eyes, causing the prior injury to his eyes to become greatly aggravated, and that plaintiff again returned for treatment to the defendant's first aid station and was advised to consult defendant's physician at Tillamook, which he did.

The complaint further alleges "that as a result of said injuries and the failure to remove all foreign substance therefrom and to properly care for said injuries, plaintiff's left eye became infected and gradually grew worse from the date of said first injury to the time plaintiff consulted qualified doctors and physicians immediately following plaintiff's second injury"; that "said injuries caused plaintiff severe, permanent and painful injuries, which resulted in plaintiff being required to have plaintiff's said left eye entirely removed and said injuries and removal of plaintiff's left eye has seriously and permanently affected plaintiff's right eye, resulting in plaintiff permanently losing more than sixty per cent of the normal vision of plaintiff's right eye and said condition will grow worse and require additional medical treatment", and that as a result of such injuries and the failure of the defendant "to properly treat and care for said injuries" plaintiff has been damaged in the sum of $35,000.

It is not necessary to set forth the alleged acts of negligence on the part of defendant, as the only question here for decision is whether the circuit court

erred in denying to defendant the equitable relief prayed for in its affirmative answer to the complaint.

In its answer, defendant admits that during all the times alleged in the complaint it was engaged in construction work at the naval lighter-than-air base in Tillamook; that the construction work involved risk and danger to its employees; that it had rejected the workmen's compensation act of the state of Oregon; that plaintiff was employed by it as a laborer, and that on or about March 5, 1943, plaintiff, together with other workmen, was directed to perform work in connection with chiseling and leveling a large concrete wall; that on that date plaintiff reported to defendant's first aid station and particles of cement dust were removed from his left eye; "that on May 3 plaintiff again reported to defendant's first aid station and was again treated at said station and was advised to consult a physician at Tillamook, Oregon, for treatment of said left eye." Defendant denies all the other material allegations of the complaint.

For a further and separate answer and defense, defendant alleges that on being advised on May 5, 1943, of plaintiff's injuries and the extent thereof, it offered to pay to plaintiff "all sums due and all installments thereof as may become due as would be payable to said plaintiff if legally entitled to compensation under the provisions of" the Oregon workmen's compensation law, and also offered to provide plaintiff "with medical, surgical and hospital services including medical or surgical apparatus, or appliances and medicines as are provided by the provisions of said" law; that on May 5, 1943, it entered into a written contract with plaintiff whereby it agreed to pay to plaintiff "all said sums due and payable under the workmen's compensation law and to supply plaintiff with all said medical

services and supplies provided for by said law'', and that plaintiff, in consideration of such promises and agreements by defendant ''released and discharged said defendant from any and all claims, demands, obligations or liabilities of whatsoever nature, either existing or arising in the future, for said accident and injuries excepting only the obligation to make the payments and provide the services provided for in said agreement''; that defendant proceeded to and did pay plaintiff all sums due and payable under the terms of the workmen's compensation law, as the same became due and payable and provided plaintiff with medical services and supplies as provided for by that law; ''that all said sums paid and all services rendered were paid to and supplied to plaintiff with respect to and for and in consideration of each and all of the injuries mentioned in plaintiff's complaint; that plaintiff accepted all said sums paid and all said services rendered.''

A copy of the compensation agreement hereinbefore referred to is set forth as an exhibit to the answer, and provides in part as follows:

''The employee, J. E. Prueitt No. 5720, represents that he was injured on the 3rd day of May, 1943, while in the employ of the employer, Sound Construction & Engineering Company. On the basis of that representation by the employee, and without any admission of liability for said injury by the employer,

''The employer agrees to compensate said employee (or such other person as may be entitled to compensation) solely on account of and because of said injury as follows:''

Then follow the terms of the agreement to be performed by the employer and the release of the employer by the employee ''from any and all claims,

demands, obligations or liability of whatsoever nature, either existing or arising in the future, for said accidents and injuries, except only the obligation to make the payments and to provide the services for herein.''

It is next alleged, in the fourth paragraph, that on July 31, 1943, plaintiff and defendant entered into a second written agreement whereby plaintiff, for and in consideration of the compensation paid from May 3, 1943, through September 28, 1943, and in consideration of the medical services and supplies ''heretofore provided to plaintiff and in consideration of the additional sum of $2,000 released and forever discharged defendant, * * * from any and all claims, demands, obligations or liabilities of whatever nature, whether in tort or in contract arising out of or in connection with the accident to or the injuries to said eye. That a copy of said agreement marked 'Exhibit B' [Exhibit A] is attached hereto and made a part hereof as if incorporated herein. That said agreement was intended to and did apply to all injuries mentioned in plaintiff's complaint; and that plaintiff did accept said payments and all of them.''

The written agreement hereinbefore last mentioned is in part as follows:

''Final Release

July 31, 1943.

''For and in consideration of compensation from May 3, 1943, through September 28, 1943, $2,000 disability * * * [and other expenses paid and assumed by the defendant] the receipt of which is hereby acknowledged, the undersigned, herein referred to as Employee, does hereby release and forever discharge Sound Construction & Engineering Company herein referred to as Employer, * * * from any and all claims, demands, obligation or liability of whatever nature, whether in tort or in

contract, arising out of or in connection with an accident occurring to and injuries received by the undersigned Employee, on or about the 3rd day of May, 1943, while in the employ of said Employer.''

The contract then provides for additional compensation if within one year from date thereof ''there shall be an aggravation of the disability resulting from the aforesaid accidental injury''.

Paragraphs V and VI of defendant's further and separate answer and defense are as follows:

''V. That plaintiff represented to defendant that said injuries and all of them mentioned and complained of in plaintiff's complaint occurred in connection with and as a result of an accident on or about May 3, 1943; that defendant believed said representations of plaintiff and acted thereon; that by reason of said representations made by plaintiff and acted upon by defendant said agreements and each of them mention said accident of May 3, 1943; that in truth and in fact said agreements applied to and plaintiff and defendant intended the same to apply to all injuries received by plaintiff and complained of in plaintiff's complaint whether such injuries were the result of an accident on or about May 3, 1943, or the result of an accident on or about March 5, 1943, as is now contended in plaintiff's complaint; that all payments made under said agreements were made and rendered in compensation for and in satisfaction of all said injuries; that plaintiff executed said agreements and each of them and accepted said payments and services and all of them with respect to all said injuries mentioned in said complaint.

''VI. That by reason of the agreements made and executed by plaintiff and by reason of the payments and services made and rendered by defendant and accepted in full by plaintiff, plaintiff has accepted satisfaction in full for all injuries from

whatsoever source arising mentioned and complained of in plaintiff's complaint and plaintiff's claims against defendant have been fully settled, satisfied and discharged and plaintiff is barred from prosecuting this action.''

In the prayer of its answer, defendant asks that the agreements of May 5, 1943, and July 31, 1943, ''be reformed so as to apply to all injuries received by plaintiff either out of or as the result of the accident occurring on or about March 5, 1943, or out of and as the result of the accident occurring on or about May 3, 1943, and all injuries arising out of and in connection with said accidents and injuries or either or both of them''; that plaintiff be forever enjoined and restrained from prosecuting this action and forever enjoined and restrained ''from asserting against defendant, its agents, servants, or employees, any claim, demand, obligation or liability of whatever nature arising out of or in connection with the accident occurring on or about March 5, 1943, or the accident occurring on or about May 3, 1943.''

Plaintiff, in his reply, after denying all the material allegations of defendant's further and separate answer and defense, affirmatively alleges that between May 3, 1943, and August 1, 1943, he was suffering extreme pain and agony and ''was mentally unbalanced, unable to read or attend to business or to take any part in any business transaction''; and that he was induced to sign the final release of July 31, 1943, through the false and fraudulent representations made by the defendant.

As a further reply, plaintiff alleges that defendant ''at no time denied liability to compensate'' him for his injuries, and that there was no consideration paid to plaintiff or received by him ''for the signing of any

instrument or document now claimed by defendant to have been signed by plaintiff.''

When defendant rested its case relating to the equitable defense set forth in its answer, plaintiff, without introducing any evidence, moved for an order of dismissal of that defense on the grounds that (1) no equitable defense was pleaded, and (2) the evidence submitted by the defendant failed to ''establish any jurisdiction in a court of equity to determine any of the matters here involved''. The court granted this motion and in its opinion gave the following reason therefor:

''There may be a series of causes all culminating in one injury or damage and only one right of recovery.

''Plaintiff's cause of action could not be split up into a series of actions as of different dates because there is only one right of recovery, therefore an agreement for compensation and a release for the injury received although it mentioned only the date of May 3rd, would be effective as to all causes leading up to and resulting in the loss of plaintiff's left eye and the damage to his right eye regardless of the date mentioned in the documents.

''Under this view of the case it is not necessary to have the intervention of the equity side of the court. If the compensation agreement and release are not found to [be] void on account of fraud as alleged in the reply, then they constitute a complete defense to the law action.''

The injuries of which plaintiff complains were the result of accidents occurring about two months apart. The first one occurred on March 5, 1943, at which time the particles of concrete and concrete dust ''hit and lodged'' in his eyes, as a result of which plaintiff ''sustained severe, permanent and painful injuries'' to his eyes. In connection with this accident plaintiff

also seeks to recover damages because of the alleged negligence of defendant's employees at the first aid station in failing to remove all foreign substance from his eyes. The second accident occurred on May 3, 1943, resulting in an aggravation of previous injuries to his eyes.

Plaintiff could release the defendant from damages for the injuries resulting from either one of these accidents without affecting his right to recover damages for injuries resulting from the other accident. However, were plaintiff to release defendant from damages for the injuries resulting from the accident of March 5, 1943, it would be necessary, in order for him to recover damages for the injuries resulting from the accident of May 3, 1943, to allege and prove aggravation of the injuries suffered on March 5, 1943, inasmuch as, according to the complaint, the last injuries were merely an aggravation of the first ones. *Maynard v. Oregon Railroad Co.*, 46 Or. 15, 78 P. 983, 68 L. R. A. 477; *Dorn v. Clarke-Woodward Drug Co.*, 65 Or. 516, 133 P. 351; *Union Oil Co. of California v. Hunt*, 9 Cir., 111 F. (2d) 269.

The instruments alleged to have been signed by plaintiff released the defendant from liability only for injuries suffered by reason of the accident of May 3, 1943. They do not purport to cover damages for the injuries resulting from the accident occurring on March 5, 1943. The compensation agreement specifically provides that the "employer agrees to compensate" plaintiff "solely on account of and in consideration of said injury" occurring on May 3, 1943. And the final release is limited to the injuries received by plaintiff "on or about the 3rd day of May, 1943," while he was employed by the defendant.

Defendant contends that the compensation agreement and the final release were intended by both plaintiff and defendant to include "all injuries received by plaintiff and complained of in plaintiff's complaint whether such injuries were the result of an accident on or about May 3, 1943, or the result of an accident on or about March 5, 1943," and that by mutual mistake only the accident of May 3, 1943, was mentioned in both agreements.

■ In the law action parol evidence would be inadmissible to vary or modify the terms of these written instruments. *Massachusetts Protective Ass'n., Inc., v. Palmer,* 141 Or. 688, 18 P. (2d) 585. Therefore defendant, by its affirmative answer, has sought the aid of a court of equity for the reformation of these documents to conform to the intention of the parties.

Section 9-102, O. C. L. A., insofar as material here, provides as follows:

"Bills of revivor * * * and cross-bills are abolished; * * * and in an action at law where the defendant is entitled to relief, arising out of facts requiring the interposition of a court of equity, and material to his defense, he may set such matter up by answer, without the necessity of filing a complaint on the equity side of the court * * *. When such an equitable matter is interposed, the proceedings at law shall be stayed and the case shall thereafter proceed until the determination of the issues thus raised as a suit in equity by which the proceedings at law may be perpetually enjoined or allowed to proceed in accordance with the final decree; or such equitable relief as is proper may be given to either party. * * *"

The form of the answer in which the equitable defense is set up is of little consequence. In the instant case, the defendant, after putting in issue the

material allegations of the complaint, sets forth by separate answer and defense facts which it asserts entitle it to equitable relief, material to its defense. It was not necessary to attach to this answer any particular label. The prayer of the answer leaves no doubt as to the relief sought.

Plaintiff argues that the affirmative answer fails to state facts sufficient to entitle defendant to equitable relief. In this connection, the following excerpt from the opinion in *Boardman v. Insurance Company of Pennsylvania,* 84 Or. 60, 164 P. 558, is pertinent:

> "The vital question to be determined is whether a mistake has been shown in the framing of the policy within the meaning of the law so as to justify its amendment according to the prayer of the plaintiffs. The precept on the subject of correction of an instrument for a mistake is firmly implanted in the jurisprudence of this state to the effect that the complaint must distinctly allege what the original agreement of the parties was, and point out with clearness and precision wherein there was a misunderstanding; that such mistake was mutual and did not arise from the gross negligence of the plaintiff or that his misconception originated in the fraud of the defendant." Citing many Oregon cases.

■ In 45 Am. Jur., Reformation of Instruments, § 46, p. 609, it is stated: "There must be an antecedent agreement which the written instrument evidences, and the mistake must have been in the drafting of the instrument, not in the making of the contract." To the same effect, see *Hayes v. Travelers Insurance Company,* 10 Cir., 93 F. (2d) 568, 125 A. L. R. 1053; *Russell v. Shell Petroleum Corporation,* 10 Cir., 66 F. (2d) 864, and authorities therein cited; 5 Williston on Contracts, Rev. Ed., § 1549, p. 4344.

Defendant's affirmative answer fails to set forth the original or antecedent agreements which were

evidenced by the written contracts. The answer does allege that on March 5, 1943, when defendant was advised of plaintiff's injuries and the extent thereof, defendant made a certain offer to plaintiff. Defendant then alleges the execution of the compensation agreement and the final release, copies of which are attached to the answer as exhibits. In reference to the final written release, it is averred that "said agreement was intended to and did apply to all injuries mentioned in plaintiff's complaint; and that plaintiff did accept said payments and all of them." This last averment is merely the construction which the pleader places upon the written instrument, and if such construction is correct, there would be no necessity for reformation.

In the fifth paragraph of the answer, it is alleged that plaintiff represented to defendant that the injuries mentioned in the complaint occurred in connection with and as a result of an accident on or about May 3, 1943; that defendant believed said representation and acted thereon, and that by reason of such representation made by plaintiff and acted upon by defendant, the agreements mentioned "said accident of May 3, 1943."

It does not appear anywhere in the answer when plaintiff made his representation. It may have been before there was any agreement whatsoever between the parties.

It is further alleged in the fifth paragraph of defendant's answer "that in truth and in fact said [written] agreements applied to and plaintiff and defendant intended the same to apply to all injuries received by plaintiff and complained of in plaintiff's complaint whether such injuries were the result of an accident on or about May 3, 1943, or the result of an

accident on or about March 5, 1943, as is now contended in plaintiff's complaint". This allegation is nothing more than defendant's construction of these instruments.

The plaintiff admits in his brief, and his attorney stated on the oral argument in this court, that the language of the written agreements supports the construction placed thereon by the defendant, to wit, that they constitute a full satisfaction of plaintiff's claims. He does not admit, however, the validity of the releases. Although we do not concur in the construction placed on these instruments by the parties thereto, nevertheless, since plaintiff and defendant are agreed that these releases, if valid, constitute a complete defense to plaintiff's claims, they should be so construed in any litigation between plaintiff and defendant involving those claims.

■ As hereinbefore pointed out, the answer does not distinctly, or otherwise, allege what the original agreement, if any, was between the parties. Nor does it allege whether the mistake occurred in the making of the original agreement or in the drafting of the written contracts. We are therefore of the opinion that defendant's further and separate answer and defense does not state facts sufficient to constitute a cause of suit for reformation of the instruments here involved.

The decree appealed from is affirmed.