Argued May 18, affirmed June 8, 1960

O'BRIEN ET AL *v.* MICHELS ET UX

352 P. 2d 735

*Charles H. Telfer* argued the cause for appellants. On the briefs were Johnson, Telfer & Sloan, Grants Pass, Oregon.

*Elbert L. Mikesell,* Grants Pass, argued the cause and filed a brief for respondents.

Before McAllister, Chief Justice, and Rossman, Perry, Goodwin and Holman, Justices.

HOLMAN, J. (Pro Tempore)

Defendants Michels purchased by deed from plaintiffs O'Brien and Lewis a parcel of land in Josephine county. Plaintiffs bring this suit to reform the deed, claiming that through mutual mistake more land was deeded to defendants than was contemplated by the parties; this defendants deny.

The evidence indicates the defendants-purchasers lived in the state of California. Mr. Michels came to Oregon to look at some land adjoining plaintiffs', which was for sale. While there he learned plaintiffs had property for sale and called upon Mr. O'Brien, who at that time acted for the plaintiffs-sellers. On September 2, O'Brien showed him the property, and claims he told Michels he would sell only that part of plaintiffs' property which was south and east of the west fork of the Illinois river. Michels denies he was so told, but admits as follows:

"Q What he was supposed to put in that description was the land that was East of the river, was it not?

"MR. TELFER: Object to that as calling for a conclusion of the witness, Your Honor.

"THE COURT: Overruled.

"A Why, I think that was his intention, maybe.

"Q That was your understanding of his intention, was it not?

"MR. TELFER: Same objection, Your Honor. Calls for a conclusion.

"THE COURT: Overruled.

"A Well, I testified already that he said he didn't want to sell land East of the—or West of the river, but he didn't say he wouldn't sell it."

At the time of the examination of the property, Michels wrote a memorandum which only he signed and which he gave to O'Brien. The memorandum was as follows:

"Agreement Between Geo. V. Michels & Mildred Michels his wife to buy property from Delbert Obrien & associates for the sume [sic] of $2500. To be paid at close of escrow upon delivery of Title Guarantee on property in Sec 19 south of Takilma road & west of the property owened [sic] by the Bob Hines family. The Sum of $100. has been paid as a deposite [sic] on the deal."

All conversations and dealings so far were subject to O'Brien's sending to Michels in California an accurate description of the property to be approved by Michels. Michels then returned to California.

O'Brien contacted a registered surveyor and asked him to prepare a description of the property south and east of the river and to deliver it to O'Brien's lawyer. The surveyor, through error, misdescribed the property, including property to the north and west of the river which included a valuable gravel bar. The description was as follows:

"Beginning at the Southeast corner of the Southwest quarter of the Southeast quarter of Section

19, Township 40 South, Range 8 West of the Willamette Meridian; thence running North along the Subdivision line, 1650 feet to the South line of the Waldo Road; thence West along said Road line, 300 feet to the Easterly bank of the West Fork of the Illinois River; *thence Southerly and Westerly along said bank as follows:* South 13° West 400 feet; South 34° West 1100 feet; South 85° West 1450 feet; South 57° West 500 feet to the South line of said Section 19, said point being 950 feet East of the Southwest corner of said Section 19; thence running East along the Section line, 3000 feet to the point of beginning, Josephine County, Oregon." (Emphasis added.)

After this was done, O'Brien wrote to Michels as follows:

"The deed is completed and in my attorney's office—Mr. E. L. Micksell, Grants Pass.

"Please advise him what disposition you want him to make."

In response to this Michels answered by letter as follows:

"I received your letter and have deposited the money with the Tri-Valley Escrow Co. Will you please instruct your attorney to send them the Deed.

"I wish that description would run *to the center of the river. I don't want your gravel bar,* but in the future if you sold to some one else, I wouldn't want to be fenced off from the river. If the description called for it to run to the center of the river that could not happen. I expect to come up in a couple weeks, or as soon as I can get a motor overhaul in the Dodge. (Emphasis added.)

"Its been quite warm here for this time of year."

Thereafter Michels was sent a title report using the erroneous description which he and his wife ap-

proved on October 11th, and the deal was then completed through escrow.

Michels says that when he received the title report he platted the description and knew that it included land on the other side of the river. He says he approved the description with this knowledge and supposed plaintiffs intended to include this ground to make up the acreage he says he told O'Brien he wanted.

After a careful examination of the testimony and exhibits, it seems clear and convincing to us, as it did to the trial judge, that the negotiations on September 2 were relative to a sale of the land south and east of the river only. Why else, on September 28, after his return to California, would Michels write: "I wish the description would run to the middle of the river. I don't want your gravel bar, but in the future if you sold to some one else, I wouldn't want to be fenced off from the river." This would only have been necessary if his understanding had been that they were dealing with property on just one side of the river. When he received the incorrect description from the title company, it read: "* * * 300 feet to the Easterly bank of the West Fork of the Illinois River; thence Southerly and Westerly along said bank as follows * * *," and then followed the erroneous metes and bounds description which included land on the other side of the river instead of running southerly and westerly along its bank. If we are to believe Michels' statements concerning his platting of the description and his conclusions therefrom, it then must have been apparent to him that O'Brien had committed an error. What purported to run along the river bank obviously did not. It would appear that either Michels is mistaken about having discovered the de-

scription included land on the opposite side of the river or he intentionally took advantage of O'Brien's error and thereby committed a fraud. We believe he was mistaken.

He says he was able to determine that the description did go to the other side of the river by virtue of the fact he had a 1932 Metzger map which showed where the river ran. It seems improbable to us that Michels, who was an experienced dealer in real property, would rely on the usual Metzger map, 22 years old, for the present precise location of a stream.

■ We believe, as did the trial judge, he was just as surprised as plaintiffs to discover subsequently that he had received more than he had bargained for, and that he is mistaken in coming to the conclusion that he knew at the time what the description covered. The documents involved and the testimony make it clear and convincing that the intentions of the parties were relative to land south and east of the river only.

Defendants advance two principal contentions upon the appeal. Defendants first contend that the evidence shows that the mistake, if one existed, was on the part of O'Brien only and was, therefore, a unilateral mistake and not grounds for reformation. Our view of the facts, as previously set forth, is contrary to this contention.

Secondly, defendants contend there must have been an antecedent agreement which the written agreement evidences, and the mistake must have been in the drafting of the instrument, not in the making of the contract, citing *Prueitt v. Sound Con. & Eng. Co.,* 178 Or 380, 167 P2d 698. Defendants claim the mistake was made in the antecedent agreement by the submitting for approval the erroneous description prior to the delivery of the deed.

██ The reason for the rule applied by defendents is that unless there is a meeting of the minds as to the antecedent agreement, there is no agreement to which the instrument can be reformed. In this case there was an antecedent agreement as we believe neither party was aware the metes and bounds description did not follow the bank of the river. We believe the intention of each of the parties was clear and that their intentions were identical. There was such a preliminary agreement to which the deed could be reformed. The mistake in the preliminary agreement was not such that it kept the intention of the parties from being identical. In *Prueitt v. Sound Con. & Eng. Co.*, supra, the court found that no antecedent agreement existed. In 5 Williston, Contracts (rev ed), p 4345, § 1550, the applicable rule is stated as follows:

> "Where a deed conveys a different or larger estate or right than was intended, and both parties shared an intent as to the estate which should have been conveyed, the grantor is allowed a reformation of the instrument so that it shall express this intent;  *  *  *"

Defendants are in a poor position to say their intention was to get land on the other side of the river when they requested in writing an extension to the center of the river. Also, it is a little difficult for them to claim more when they approved a description which purported to run along the southerly and easterly bank of the river.

The use of such a description might suggest plaintiff's true remedy is for construction of the document, not for reformation, as perhaps, in fact, the deed only transferred land that was bounded by the bank of the river. However, the parties have tried this case as

being one for reformation and it will be so treated here.

■ We do not believe O'Brien was guilty of any negligence in the transaction. He put the matter, with proper instructions, in the hands of a licensed surveyor and a lawyer. What more should a layman do?

No claim has been made by defendants in this appeal that the description to which plaintiffs seek to conform the deed does not follow the bank of the river.

As a result of the foregoing, the decree of the lower court will be affirmed.