Argued and submitted April 4, Court of Appeals affirmed; remanded for further proceedings July 24, petition for rehearing allowed, decision modified, Court of Appeals reversed and judgment of trial court reinstated October 23, 1984
See 298 Or 69, 689 P2d 955 (1984)

# KENTNER et al,
*Respondents on Review,*

*v.*

# GULF INSURANCE COMPANY,
*Petitioner on Review.*

(TC 25403, 30999; CA A26069; SC S30307)

686 P2d 339

Robert L. Nash, Bend, argued the cause and filed the petition for petitioner on review. With him on the petition was Johnson, Marceau, Karnopp & Petersen, Bend.

Lawrence W. Erwin, Bend, argued the cause and filed the response for respondents on review.

CAMPBELL, J.

## CAMPBELL, J.

We allowed review of this case primarily to determine whether proof of reckless indifference is sufficient to establish the scienter element for statutory insurance fraud. We hold that it is but nevertheless affirm the reversal and remand entered by the Court of Appeals for a different reason.

While the principal question is not complex, this case presents several other questions. For this reason, we must recite some of the lengthy history of this case.

Plaintiffs Kentners, husband and wife, purchased a homeowners' insurance policy, which included fire insurance coverage, from defendant Gulf Insurance Company in July 1977. Lumbermens Insurance Agency was the broker for this policy. Lumbermens' employee, Bailey, completed the application for the Kentners. This application stated that Kentners' house, which they built themselves, was approximately 2400 square feet and of high quality construction. After the annual renewal of this policy, Gulf received a report of a routine inspection of plaintiffs' house. The inspection revealed that the house was only 1484 square feet and created doubt concerning the quality of construction. When Gulf received this report, it decided it wanted to discontinue the insurance policy because it dealt only in the "deviated" homeowners' insurance market.[1] Gulf wrote to Lumbermens asking it to get a voluntary cancellation of the policy from the plaintiffs or to send a cancellation notice.[2]

Following several unsuccessful attempts to obtain voluntary cancellation from plaintiffs, two of Lumbermens' employees signed plaintiffs' names to a cancellation request and sent it to Gulf in September 1978. Lumbermens then procured a substitute policy for the Kentners from New Zealand Insurance Company Limited.[3] Although an employee

---

[1] A defense witness testified that there are three different markets of homeowners' insurance. The "deviated" market is the most desirable. It generally has lower premiums and is designed for homes of high quality and high value.

[2] Voluntary cancellation is more advantageous to the insured because direct cancellation generally will require the insured to pay more for insurance coverage in the future.

[3] The Gulf policy provided coverage of $38,500 for personal property loss. This policy also had a replacement cost rider for personal property loss and an "inflation guard" endorsement, which automatically increased the coverage limits annually. The New Zealand policy limits were substantially lower and provided only for the depreciated value of personal property.

of Lumbermens testified that Kentners knew of this substitution of policies and approved, Kentners testified that they did not know about it.

In March of 1979 a fire occurred in the Kentners' six car garage. They filed proof of loss for personal property destroyed in the fire with both Gulf and New Zealand. Gulf denied the claim, stating that any insurance coverage they might have provided for the Kentners ended before the fire. New Zealand made two different payments to the Kentners.

In July 1979 plaintiffs brought this action against Gulf, Lumbermens and Lumbermens' employee, Bailey, for the claim on the insurance. Gulf responded with numerous affirmative defenses.

The case against Gulf came to trial on Kentners' sixth amended complaint. Shortly before trial both Lumbermens and Bailey were dismissed as defendants. The trial was on the limited issue of insurance coverage and did not extend to the amount of damage suffered. Kentners' basic theory was that the attempted cancellation of their insurance policy with Gulf, by means of the forged cancellation request, was ineffective and Gulf was liable for the claim. The trial court held as a matter of law that Kentners should prevail unless Gulf proved one of its affirmative defenses, and it allowed four of Gulf's affirmative defenses to go to the jury out of the ten asserted in Gulf's final answer.

Gulf argued that it was relieved of any obligation to pay, because Kentners committed fraud in the inducement in that Kentners were at least reckless in giving false information in their application. Gulf argued that had it known the true size and condition of Kentners' house it would have refused to issue the insurance policy. It also argued that plaintiffs made fraudulent misrepresentations in their claim following the fire. It alleged that Kentners listed property that belonged to their renter on the proof of loss form. For a third affirmative defense Gulf argued that even if Lumbermens were not acting as Kentners' agent in cancelling the Gulf policy and substituting the New Zealand policy, plaintiffs ratified these actions by requesting and receiving payment from New Zealand. It also argued that these actions constituted waiver.

During trial, over plaintiffs' objections, the trial court allowed the application for the Gulf insurance policy into evidence, although it had not been made part of the policy. Plaintiffs also excepted to an instruction which essentially held that Gulf only needed to prove a reckless misrepresentation to prevail on its fraud defenses.

The jury returned a general verdict for Gulf. Plaintiffs appealed, assigning many errors. Gulf cross-appealed, contending that the trial court erred in awarding less costs than were appropriate.

The Court of Appeals reversed and remanded for a new trial. *Kentner v. Gulf Ins. Co.,* 66 Or App 15, 673 P2d 1354 (1983). It held that it was unnecessary to address all 20 of plaintiffs' assigned errors because most did not warrant discussion. The court held that proof of reckless indifference was insufficient as a matter of law to prove the scienter element and prevail on a fraud defense under ORS 743.612, and reversed and remanded for a new trial. It also noted that an insurance company is not required to prove reliance on the misrepresentation and that the trial court did not err in admitting the insurance application notwithstanding ORS 743.045(1).

We allowed Gulf's petition for review. It alleged four errors in its petition. Of these four, we chose to address only the questions whether the Court of Appeals used an incorrect standard for the scienter element of fraud and whether it construed an inapplicable statute. Plaintiffs' response argues that proof of reckless indifference is insufficient under the statute, that the policy should control over the statute, and that the policy only allowed cancellation following intentional misrepresentations and that the Court of Appeals construed the correct statute. Plaintiffs also renewed their objection to the introduction into evidence of the application itself.

There are two statutes that refer to fraud in connection with insurance policies. ORS 743.042(1) refers to fraud specifically in an application:

"(1)   All statements and descriptions in any application for an insurance policy by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect

statements shall not prevent a recovery under the policy unless either:

"(a)   Fraudulent; or

"(b)   Material either to the acceptance of the risk, or to the hazard assumed by the insurer."

ORS 743.612 refers to fraud specifically in a fire insurance policy:

"A fire insurance policy shall contain a provision as follows: 'This entire policy shall be void if, whether before or after a loss, the insured has wilfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.' "[4]

In this case, we have two different allegations of fraud: one, that plaintiffs made misrepresentations in their application for insurance concerning the condition and value of their house, and the other that plaintiffs made misrepresentations on their proof of loss form. All parties are agreed that as a general rule a specific statute controls over a general statute. If there were a statute referring to fraud in a home-owners' insurance policy, we would have no problem finding that to be the controlling statute. However, we find no statute directed specifically to this sort of insurance.[5]

The homeowners' insurance policy in the present case provides protection against loss from fire. The Court of Appeals held that the statute concerning fraud in a fire insurance policy, ORS 743.612, was the controlling statute for both allegations of fraud. On the matter of alleged fraud in the proof of loss, we agree that this is correct. After examination of the two statutes we hold that both statutes require the same scienter element, so if there was error in holding that ORS 743.612 controls on the question of fraud in the application for an insurance policy it was without effect.

---

[4] ORS 743.612 is very similar to former Lord's Oregon Laws §4666, enacted in 1907 and reenacted as part of the major revision of the insurance code in 1967. ORS 743.042 was enacted in 1967. We have found no predecessor statute.

[5] In plaintiffs' response to the petition they seem to suggest for the first time that the court consider ORS 743.690. We note that this statute concerning Home Protection Insurance has nothing to do with this case.

We do not read these statutes as requiring that the misrepresentation be wilful in order for an insurance company to avoid a contract. In *Walker v. Fireman's Fund Ins. Co.,* 114 Or 545, 234 P 542 (1925), we discussed the necessary scienter requirement for insurance fraud:

> "The difference in law between a warranty and a false representation is that breach of a warranty voids the contract, irrespective of its gravity, while a false representation will only void the contract when it is shown to have been made by the party claiming the benefit of the contract and made either with knowledge of its falsity or *recklessly, without any knowledge as to whether it was true or false,* such representation being of a nature that would reasonably tend to influence the action of the insurer in accepting or declining the risk or in fixing the amount of the premium to be paid." (Emphasis added.) 114 Or at 559-60.

This holding has never been overruled and we now expressly reaffirm it. In *Mutual of Enumclaw Ins. v. McBride,* 295 Or 398, 667 P2d 494 (1983), we held that the clear and convincing standard of proof generally applicable in fraud cases does not apply to proof of misrepresentation under ORS 743.612. In that case, we noted the purpose of this statute is to discourage insurance fraud, and the purpose would be thwarted with a higher standard of proof. 295 Or at 407. That purpose would also be thwarted if we were to adopt a scienter element that is more difficult to prove. As we said about common law fraud in *State ex rel Redden v. Discount Fabrics,* 289 Or 375, 384-85, 615 P2d 1034 (1980), quoting from *Horner v. Wagy,* 173 Or 441, 459, 146 P2d 92 (1944), the element of scienter, as an element of actionable fraud, is imputable when the statement is attended by reckless indifference to its truth or falsity on the part of one making it. We see no reason to make insurance fraud more difficult to prove than common law fraud.

Plaintiffs also argue that both the statutes concerning insurance fraud are irrelevant in this case. They contend that the policy language itself is more protective of the insured than the statutes and thus should control. ORS 743.051. Plaintiffs argue that because the attempt at cancellation occured after a renewal of the policy, the following policy provision should apply:

"We may cancel this policy only for the reasons stated in this condition by notifying you in writing of the date cancellation takes effect.

"* * * * *

"(2)   When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by notifying you at least 10 days before the date cancellation takes effect.

"(3)   When this policy has been in effect for 60 days or more, or at any time if it is a renewal policy with us, we may cancel if there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy or if the risk has changed substantially since the policy was issued. This can be done by notifying you at least 30 days before the date cancellation takes effect."

Plaintiffs argue that this provision allows Gulf to cancel the policy after notification and this is the only method available for it to avoid liability for the claim. We do not read the provision so broadly. Although this is clearly one method of cancellation, the provision does not indicate that it is the only way Gulf can avoid liability for the claim. Plaintiffs ignore the fact that the trial court held as a matter of law that Gulf failed to cancel the policy, so cancellation is not the issue. Cancellation is different than prevention of recovery (ORS 743.042(1)) or a declaration that the policy is void (ORS 743.612).

Plaintiffs present one final argument: that the trial court erred in allowing the admission into evidence of the application itself because the insurer did not deliver a copy of it with the policy. They rely on ORS 743.045(1):

"(1)   Except as provided in ORS 743.075, [relating to binders] every contract of insurance shall be construed according to the terms and conditions of the policy. Where the contract is made pursuant to a written application therefor, if the insurer delivers a copy of such application with the policy to the insured, thereupon such application shall become a part of the insurance policy. If the application is not so delivered to the insured, it shall not be a part of the insurance policy and *the insurer shall be precluded from introducing such application as evidence in any action based upon or involving such policy.*" (Emphasis added.)

We agree with plaintiffs.

■■    This statute unambiguously excludes the introduction into evidence of an application for an insurance policy in any action on a policy unless the application is made a part of the policy.[6] The evidence is uncontroverted that in the present case the application was not made a part of the policy. We can find no ambiguity in the words of ORS 743.045(1), and Gulf has failed to point out any. Although it may seem harsh to exclude the application itself when the insurer is relying on a fraud defense, it would be a simple matter for the insurer always to make the application a part of the policy. If an insurance company delivers a copy of the application with the policy to the insured, this part of ORS 743.045(1) can have no effect, harsh or otherwise.

The admission into evidence of the application was error, and this error could have affected the jury's findings on the fraud in the inducement defense. For this reason, a remand for further proceedings is necessary.

The Court of Appeals is affirmed, and the case is remanded for further proceedings.

---

[6] The emphasized language was added to the statute in 1971. Or Laws 1971, ch 231, §22. An explanation of this amendment stated: "This clarifies the present law on the use of a policy application in defense of a claim."