Argued and submitted March 1, reversed and remanded with instructions
September 1, 1993

Donald F. CALLAWAY
and Linda L. Callaway,
*Respondents,*

*v.*

SUBLIMITY INSURANCE COMPANY,
an Oregon corporation,
*Appellant.*

(9101-00207; CA A73082)

858 P2d 888

J. Phillip Parks, Salem, argued the cause for appellant. With him on the briefs were Billy M. Sime and Parks, Bauer & Sime, Salem.

Michael S. Joseph, Portland, argued the cause for respondents. With him on the brief was Donald K. Robertson & Associates, Portland.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

WARREN, P. J.

## WARREN, P. J.

In this action for breach of an insurance contract, defendant Sublimity Insurance Company (Sublimity) appeals a judgment for plaintiffs entered after the trial court denied its motion for a directed verdict. We reverse.

In October, 1989, plaintiffs bought a used 1989 Ford pickup and had it insured by Sublimity against losses, including theft loss. The truck was stolen in February, 1990. After Sublimity denied plaintiffs' claim for the loss, plaintiffs sued to recover their attorney fees and $22,085.54, the alleged value of the truck. Sublimity raised an affirmative defense that plaintiffs had engaged in fraud in submitting their claim and that, therefore, there was no coverage. At trial, Sublimity moved for a directed verdict on the basis of that defense. The trial court denied the motion and submitted the case to the jury, which returned a verdict of $11,042.77 in favor of plaintiffs.

Sublimity assigns error to the denial of its motion for a directed verdict. The insurance policy contains an anti-fraud provision that reads:

> "*FRAUD*
>
> "We do not provide coverage for any 'insured' who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under the policy." (Emphasis in original.)

To prevail on that defense, Sublimity must prove that plaintiffs

> "made [a false representation] either with knowledge of its falsity or recklessly, without any knowledge as to whether it was true or false, such representation being of a nature that would reasonably tend to influence the action of the insurer * * *." *Walker v. Fireman's Fund Ins. Co.*, 114 Or 545, 559, 234 P 542 (1925).

*See also Kentner v. Gulf Ins. Co.*, 297 Or 470, 476, 686 P2d 339, *mod on other grounds*, 298 Or 69, 689 P2d 955 (1984).[1]

---

[1] In addition, an insurance company need not prove that it relied on or sustained pecuniary injury as a result of the insured's misrepresentations. *See Henricksen v. Home Ins. Co.*, 237 Or 539, 543, 392 P2d 324 (1964).

■ It is uncontroverted that plaintiffs made false statements and submitted altered receipts in connection with their claim. The evidence shows that their fraudulent conduct was related to the following accessories that were allegedly put on the truck:

(1) Tires and wheels. In the course of investigation, Koger, a claim representative for Sublimity, took a recorded statement from defendant Donald Callaway. Callaway told Koger that he bought five tires for $667.50. To support that claim, he later submitted an invoice, on which he had changed the date of the purchase from June 19, 1989 to October 19, 1989, the name of the purchaser from Bart Associates to himself, the number of tires from four to five, the price of the tires from $33.50 per unit to $133.50 and the total amount of invoice from $134 to $667.50. He added a description of the tires that was not on the original invoice. At trial, Callaway admitted that the tires were from his old pickup and originally purchased at a considerably lower price.[2]

Callaway also obtained a receipt that described four wheels costing $76.54 each, and altered it by changing the name of the purchaser from Bart Associates to himself and the price per wheel from $76.54 to $96.54. He added a figure of $386.16 as the total amount of the purchase price and deleted the words "rim cracked."

(2) Running boards. In his recorded statement to Koger, Callaway stated that he had recently installed $300 worth of new running boards on the truck. To support that claim, Callaway obtained an invoice from his brother-in-law and altered it to show that the invoice belonged to him and pertained to his truck. At trial, Callaway admitted that he bought the running boards at a flea market for $75 and installed them on the truck himself. He was also untruthful in an examination under oath concerning the source of that altered receipt.

(3) Tailgate cover. Callaway altered a bedliner invoice to include a tailgate cover worth $25.

---

[2] Defendant Linda Callaway also made some misrepresentations about the tires. She initially reported that the truck had new rims and tires on it worth $800. During her examination under oath, she falsely stated that the wheels and tires were new and that she had never seen them before they purchased the truck.

(4) Trailer hitch. Callaway told Koger that he bought a trailer hitch for cash at Twelve Mile Welding the previous October. At trial, he admitted that that was not true, because the trailer hitch was about 10 years old and had been on a number of other pickups.

In addition, during his examination under oath, Callaway stated that he attached a yellow sticker in the middle of the altered receipts with a notation that says, "[T]his is a copy of what it would cost to replace — not an invoice of purchase." He admitted that no such notations were actually attached.

In addition to admitting that he engaged in the described behavior, Callaway acknowledged that when he submitted false receipts to Sublimity he intended to represent that the receipts were for the purchases he actually made, although in fact he knew they were not.[3] He also understood at the time he submitted his claim that, by misrepresenting some accessories on the truck as newer, he would get more money.[4]

---

[3] On cross-examination, Callaway testified:

"Q Is it your testimony under oath that you never intended to communicate to [Sublimity] that those documents were actually receipts for purchases that you made?

"A That was — at what date was that, sir?

"Q At any date, Mr. Callaway, since this loss occurred.

"A Those invoices were intended to be representative of what it would cost to replace them.

"Q Not — you never represented to [Sublimity] that they were receipts for purchases that you made; is that what you're telling this jury?

"A No, I'm not. *I intended them to be that originally.*

"Q Then you got caught?

"A Yes.

"Q You got caught, so *you had phonied these receipts up then to try to show Sublimity that you were, in fact, the one that had made purchases for the amounts that are reflected?*

"A *Yes*, sir." (Emphasis supplied.)

[4] Callaway again testfied on cross-examination:

"Q Mr. Callaway, your understanding throughout the presentation of this claim to Sublimity was that the newer the equipment, the more money you were going to get; isn't that true?

"A The newer the equipment?

"Q Yeah. The newer the stuff that was supposedly on this truck, the more money you were going to get; isn't that true?

"A Not necessarily.

Although the trial court agreed with Sublimity that Callaway's statements were false and material, it denied Sublimity's motion for a directed verdict. The court reasoned that the question of plaintiffs' intent in doing what they did was for the jury to decide. On appeal, plaintiffs argue that the trial court was correct, because whether they intended to deceive Sublimity and whether their misrepresentations were material are both jury questions. Under the circumstances of this case, we disagree.

Based on the uncontroverted evidence, including plaintiffs' admissions, reasonable minds cannot differ on the nature and purpose of plaintiffs' conduct. Callaway admitted that he made false statements and submitted altered receipts with the intent to mislead Sublimity into paying more than the actual loss. If intent to deceive is a necessary element in a false claim submission case, Callaway's admissions suffice. *Compare Willis v. Horticultural Fire Relief*, 69 Or 293, 137 P 161 (1914); *Transamerica v. Bloomfield*, 55 Or App 31, 35, 637 P2d 176 (1981), *overruled on other grounds by Mutual of Enumclaw Ins. Co. v. McBride*, 295 Or 398, 667 P2d 494 (1983), *with W. H. Eaid v. National Casualty Co.*, 122 Or 547, 555, 259 P 902 (1927). Further, plaintiffs' conduct clearly constitutes a pattern of fraud, and cannot be viewed as immaterial. *See, e.g., Lykos v. American Home Ins. Co.*, 609 F2d 314 (7th Cir 1979), *cert den* 444 US 1079 (1980). The matters misrepresented are material because they pertained to a subject that was "relevant and germane to the insurer's investigation as it was then proceeding." *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F2d 179, 183 (2nd Cir 1984); *see also Long v. Ins. Co. of North America*, 670 F2d 930, 934 (10th Cir 1982). The entire insurance contract was voided by plaintiffs' fraudulent conduct. *See Henderickson v. Home Ins. Co., supra*, 237 Or at 543 n 1. The trial court should have granted Sublimity's motion for a directed verdict.

Because of our disposition of the first assignment of error, we do not address Sublimity's other assignments of error.

Reversed and remanded with instructions to enter a judgment for defendant.

---

"Q You didn't understand that to be the principal?

"A *Some items.*" (Emphasis supplied.)