Argued and submitted October 12, 2020, affirmed June 16, petition for review denied November 4, 2021 (368 Or 702)

Matthew KELLY,
*Plaintiff-Appellant,*
*and*

Shelly KELLY,
*Plaintiff,*

*v.*

STATE FARM FIRE
AND CASUALTY COMPANY,
an Illinois corporation,
*Defendant-Respondent.*

Marion County Circuit Court
18CV07957; A169464

494 P3d 1009

Plaintiff appeals a judgment in favor of defendant insurer on plaintiff's breach of contract claim involving fire insurance. After a fire destroyed plaintiff's house, plaintiff made a claim on his homeowner's insurance policy. Defendant investigated and ultimately denied the claim. When plaintiff brought an action for breach of contract, defendant responded, among other things, that the insurance contract was void due to plaintiff making misrepresentations during its claim investigation. The insurance policy contained a provision, as required by ORS 742.208, that the entire policy would be void if, whether before or after a loss, the insured willfully concealed or misrepresented any material fact or circumstance concerning the insurance or the subject of it, or the insured's interest in it, or in the case of any false swearing by the insured related to the insurance. On summary judgment, defendant offered uncontested evidence that plaintiff had misrepresented where he lived after the fire, causing defendant to pay plaintiff $3,600 in additional living expense (ALE) benefits under the policy. The trial court granted summary judgment for defendant, agreeing that plaintiff's misrepresentation voided the entire policy. Plaintiff challenges that ruling, arguing that his misrepresentation was not "material," as required to void the policy under ORS 742.208 and the policy terms. *Held*: Plaintiff's misrepresentation was material and, consequently, voided the entire policy.

Affirmed.

Donald D. Abar, Judge.

William D. Brandt argued the cause and filed the briefs for appellant.

Anthony L. Reiner argued the cause for respondent. Also on the brief was Maloney Lauersdorf Reiner PC.

Before Armstrong, Presiding Judge, and Aoyagi, Judge, and Brewer, Senior Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

This is a breach of contract action related to fire insurance. After a fire destroyed plaintiff's house, plaintiff made a claim on his homeowner's insurance policy with defendant insurer. Defendant investigated and ultimately denied the claim. Plaintiff brought an action for breach of contract. In response, among other things, defendant asserted that the insurance contract was void due to plaintiff making misrepresentations during defendant's claim investigation. The trial court granted summary judgment for defendant, based on the contract being void. Plaintiff appeals, assigning error to the grant of summary judgment. For the following reasons, we affirm.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law. ORCP 47 C. "A material fact is one that, under applicable law, might affect the outcome of a case." *Zygar v. Johnson*, 169 Or App 638, 646, 10 P3d 326 (2000), *rev den*, 331 Or 584 (2001). "No genuine issue of material fact exists if no objectively reasonable juror could return a verdict for the nonmoving party." *Wirth v. Sierra Cascade, LLC*, 234 Or App 740, 745, 230 P3d 29, *rev den*, 348 Or 669 (2010). In reviewing a trial court's grant of summary judgment, we view the record and all reasonable inferences that may be drawn from it in the light most favorable to the nonmoving party to determine whether the legal standard is met. *Id.* We state the facts accordingly.

## FACTS

Plaintiff owns real property in Aumsville. In 2017, there was a large house on the property, which was insured under a homeowner's policy issued by defendant to plaintiff and his then-wife. A fire completely destroyed the house on May 16, 2017. The fire originated in the garage. Inside the garage was a metal grinder that sat atop a piece of carpet on top of a freezer. The fire marshal was unable to determine the cause of the fire but could not rule out that it originated

at the grinder. According to the fire marshal's report, plaintiff told the fire marshal that he had used the grinder that morning, then left to run errands, and found the house engulfed in flames when he returned around 1:00 p.m. A tenant living in the guesthouse on the property reported hearing a crackling noise and seeing smoke when she came home at lunchtime.

Plaintiff filed an insurance claim. Defendant made an advance payment of $10,000 to plaintiff for loss of personal property. An adjuster interviewed plaintiff on May 22, taking an initial recorded statement. During the interview, plaintiff represented that he made $150,000 annually as a general contractor with his business, Kelly and Sons Construction, Inc. He also represented that, in the five months before the fire, he had been staying in the Aumsville property's guesthouse or with his girlfriend.[1]

After the interview, defendant set loss reserves on plaintiff's claim. It also began paying "Additional Living Expense" (ALE) benefits to cover the cost of alternative housing. The ALE provision of the policy states:

> "**Additional Living Expense**. When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy."

In connection with the ALE benefits, plaintiff represented to defendant that he had moved into the "Boxwood property" on June 19, lived there until August 31, and incurred $1,500 per month in rental charges to live there. Defendant paid plaintiff $3,600 in ALE benefits based on that information.

Meanwhile, on June 22, defendant's special investigations unit began investigating concerns of potential fraud

---

[1] Plaintiff divorced in February 2017, shortly before the fire, and was awarded ownership of the Aumsville property. His ex-wife was initially involved in this litigation, but she voluntarily dismissed her claim against defendant and is no longer a party, so we generally omit her from our discussion.

in connection with the insurance claim and, in November 2017, interviewed plaintiff. Defendant's investigation revealed that plaintiff owned the Boxwood property, that he had not moved into or lived at that property after the fire, and that he had sold the property on August 29, 2017. Further, defendant learned during its investigation—and plaintiff admitted in his November interview—that plaintiff had been in jail from December 29, 2016, until May 10, 2017, not living in the Aumsville guesthouse or with his girlfriend. Defendant also learned—and plaintiff then admitted— that plaintiff's construction company had last been active in 2014, that plaintiff had made about $51,000 doing construction work for other companies in 2016, and that plaintiff had not received any 2017 income as of May 2017.

In March 2018, plaintiff filed a breach-of-contract action against defendant. The operative complaint contained two claims, the first based on defendant's failure to pay plaintiff's insurance claim and the second based on defendant's failure to make mortgage payments. Plaintiff sought $1,099,925 in damages, among other relief.

In May 2018, defendant denied coverage on plaintiff's insurance claim. Shortly thereafter, defendant answered plaintiff's complaint. In its answer, defendant raised four affirmative defenses, only one of which is relevant on appeal. As its second affirmative defense, defendant invoked the "Concealment, Misrepresentation or Fraud" provision of plaintiff's home insurance policy, which defendant asserted applied because plaintiff had willfully concealed facts and made misrepresentations regarding his income and work history, his incarceration and residency, and the ALE claims.[2]

---

[2] As part of its second affirmative defense, defendant also asserted that plaintiff had concealed and misrepresented "the events and circumstances of the Fire" and his own "actions surrounding the Fire." Those assertions were consistent with defendant's first affirmative defense, invoking a policy exclusion for "intentional acts," and defendant's claim-denial letter, in which defendant said that its investigation had "revealed that the loss was likely intentionally caused by or procured by an insured person." Plaintiff sought summary judgment on defendant's arson defenses, asserting that there was no evidence that the fire was anything but accidental, but the trial court denied that motion based on there being a genuine dispute of material fact as to the cause of the fire. Because that ruling is not at issue on appeal, we limit our discussion of the second affirmative defense to the three alleged misrepresentations described in the text.

That provision of plaintiff's home insurance policy—which is required by statute, ORS 742.208—provides, in relevant part, as follows:

"b.   In order to use any representation made by you or on your behalf in defense of a claim under the policy, we must show that the representations are material and that we relied on them.

"c.   Subject to items a. and b. above, this entire policy will be void:

"(1)   If, whether before or after a loss, you have willfully concealed or misrepresented any material fact or circumstance concerning

"(a)   this insurance or the subject of it; or

"(b)   your interest in it; or

"(2)   in the case of any false swearing by you related to this insurance."

Relying on that provision, defendant took the position that plaintiff's misrepresentations voided the entire insurance policy.

Plaintiff and defendant cross-moved for summary judgment on defendant's second affirmative defense. Defendant put in evidence that plaintiff had misrepresented his income, his pre-fire residence, and his post-fire rental of the Boxwood property. Defendant asserted that it had relied on the misrepresentation about the Boxwood property in paying $3,600 in ALE benefits and that it had relied on the misrepresentations about plaintiff's income and pre-fire residence when it initially accepted that plaintiff had "no motive to cause the loss," paid a $10,000 advance, paid $37,666 in ALE benefits, delayed its fraud investigation, and set loss reserves.

Plaintiff did not put in any evidence that his representations about his income, residency, or rental of the Boxwood property were true. Instead, he argued that defendant had failed to show that the misrepresentations were material or that defendant relied on them, as required under the policy to use them against him. Plaintiff pointed out that defendant paid the $10,000 advance *before* plaintiff's

initial interview, so defendant could not have relied on any misrepresentation in paying it. Plaintiff argued that his income was immaterial to the ALE payments. He argued that the asserted 30-day delay in starting a fraud investigation was insufficient to prove materiality. Finally, he argued that his misrepresentation about the Boxwood property was immaterial, because he lost the ability to rent the Aumsville guesthouse after the fire, which loss of fair rental value was covered by the policy and exceeded the Boxwood amount. That is, plaintiff suggested that, if he had not improperly received $3,600 in ALE benefits related to the Boxwood property, he would have made a proper claim for more than $3,600 in lost rental value for the Aumsville guesthouse, such that his misrepresentation about the Boxwood property essentially resulted in a net benefit to defendant.

The trial court granted summary judgment to defendant. It concluded that, under the terms of the policy and ORS 742.208, plaintiff's misrepresentation about the Boxwood property voided the entire policy, because it was material and defendant relied on it in paying $3,600 in ALE benefits to plaintiff. It further concluded that plaintiff's misrepresentation about his annual income was material and that defendant relied on it in paying $37,666 in ALE benefits, delaying its fraud investigation, and setting loss reserves, which was an additional reason that the policy was void. Finally, the court concluded that plaintiff's misrepresentation about where he was living during the five months before the fire was material and that defendant relied on it in paying $37,666 in ALE benefits and setting loss reserves, which was yet another reason that the policy was void. Having determined that the insurance policy was void, the trial court entered a general judgment for defendant.

Plaintiff appeals. In his first assignment of error, he challenges the grant of summary judgment to defendant on the second affirmative defense as it pertains to the Boxwood property misrepresentation, arguing that the representation was not material or that there is a genuine dispute of material fact regarding its materiality. In his second assignment of error, he challenges the grant of summary judgment to defendant on the second affirmative defense as it pertains to

the income and residency misrepresentations, arguing that defendant did not rely on those representations or that there is a genuine dispute of material fact regarding its reliance on them.

## ANALYSIS

ORS 742.208 requires a fire insurance policy to contain a provision regarding concealment, misrepresentations, or fraud by the insured. The provision in plaintiff's fire insurance policy with defendant is identical in substance to the statutory language. "When policy language matches the requirements of the statute, we approach the issue of the interpretation of the policy as a matter of statutory construction." *Eslamizar v. American States Ins. Co.*, 134 Or App 138, 142, 894 P2d 1195, *rev den*, 322 Or 228 (1995).

When an insurer claims that a policyholder has made a misrepresentation that voids the policy, the insurer bears the burden of proving the statutory elements—including materiality and reliance—by a preponderance of the evidence. *Mutual of Enumclaw Ins. v. McBride*, 295 Or 398, 407, 667 P2d 494 (1983) (interpreting predecessor statute for standard of proof). Importantly, "[a] misrepresentation after the loss as to a single material fact will forfeit the entire insurance contract." *Henricksen v. Home Ins. Co.*, 237 Or 539, 542 n 1, 392 P2d 324 (1964); *see also* ORS 742.208 (stating that the "entire policy shall be void"). We therefore begin with the misrepresentation that plaintiff rented the Boxwood property from June 19 to August 31 for $1,500 monthly, which is the subject of the first assignment of error, to determine whether the trial court erred in ruling on summary judgment that that misrepresentation voided the entire policy.

In his first assignment of error, plaintiff contends that the trial court erred in concluding that the Boxwood property misrepresentation voided the entire policy, either because that misrepresentation was immaterial as a matter of law or because there was at least a genuine dispute of fact regarding materiality. Defendant disagrees, maintaining that the trial court correctly concluded that there was no genuine dispute about materiality and that the Boxwood misrepresentation was material.

The purpose of ORS 742.208 is to discourage insurance fraud. *McBride*, 295 Or at 407 (stating that the enactment of *former* ORS 743.612, *renumbered as* ORS 742.208 (1989), "evinces a general public policy to discourage insurance fraud"); *Kentner v. Gulf Ins. Co.*, 66 Or App 15, 23, 673 P2d 1354 (1983), *aff'd*, 297 Or 470, *on reh'g*, 298 Or 69 (1984) ("The objective of ORS 743.612 is to discourage insurance fraud."). That includes discouraging "false claims concerning the amount of loss or the circumstances of the fire and false statements that prevent or hamper investigation of the claim." *American Federal Savings v. Rice*, 76 Or App 635, 641-42, 711 P2d 150 (1985). Only "material" misrepresentations void a policy. ORS 742.208(3).

How the materiality requirement applies in practice depends on the context in which a misrepresentation is made. A false representation in the insurance application process "is material only if the insurer would not have accepted the application at the premium stated had a truthful answer been given." *Santilli v. State Farm*, 278 Or 53, 57, 562 P2d 965 (1977); *see also Walker v. Fireman's Fund Ins. Co.*, 114 Or 545, 559-60, 234 P 542 (1925) (describing a misrepresentation in the application as material if it "would reasonably tend to influence the action of the insurer in accepting or declining the risk or in fixing the amount of the premium to be paid"). By contrast, in the context of claim fraud, we have said that a misrepresentation is material if it is "'relevant and germane to the insurer's investigation as it was then proceeding.'" *Callaway v. Sublimity Ins. Co.*, 123 Or App 18, 23, 858 P2d 888 (1993) (quoting *Fine v. Bellefonte Underwriters Ins. Co.*, 725 F2d 179, 183 (2nd Cir 1984)). In *Callaway*, the insured's automobile insurance policy provided that coverage would not be provided to an insured who "made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under the policy." *Id.* at 20. When his truck was stolen, the insured made a claim in which he exaggerated the truck's value, by falsifying receipts and otherwise misrepresenting the value of certain parts and accessories. *Id.* at 23. We held that those misrepresentations "[could] not be viewed as immaterial" and that the insurer was entitled to a directed verdict as a matter of law. *Id.*

Plaintiff first argues that his Boxwood misrepresentation was immaterial as a matter of law, because ALE benefits are "collateral," do not pertain to the covered loss of the house, and were not included in plaintiff's official "proof of loss." Although he does not expressly say so, plaintiff is essentially arguing for the divisibility or severability of coverages—an argument that fails under established Oregon law.

Plaintiff's policy contains three types of coverage—Coverage A (Dwelling), Coverage B (Personal Property), and Coverage C (Loss of Use/ALE). Some jurisdictions treat different coverages in a single policy as divisible or severable, even in the event of concealment, misrepresentation, or fraud. *See, e.g.*, *Johnson v. South State Ins. Co.*, 288 SC 239, 241-42, 341 SE2d 793, 794 (1986) (requiring "a causative link between a policy exclusion and a loss before recovery may be defeated," in part because of the law's disfavor of forfeiture for insurance contracts, and holding that, where the insured misrepresented the contents of a destroyed house, "that recovery was properly voided," but "recovery shall not be defeated on the dwelling and living expenses because the fraud did not affect these items"). However, the majority of jurisdictions will not divide or sever coverages in the event of concealment, misrepresentation, or fraud. *See, e.g.*, *Schneer v. Allstate Indem. Co.*, 767 So 2d 485, 489-90 (Fla Dist Ct App 2000) ("Florida has long aligned itself with the majority of jurisdictions which recognize the divisibility of an insurance policy but only in the absence of fraud and misrepresentation."); *Mutual of Enumclaw Ins. Co. v. Cox*, 110 Wash 2d 643, 648-50, 757 P2d 499, 502 (1988) (holding that insured's fraud regarding personal property coverage voided entire fire insurance policy).

Oregon has long followed the majority rule. In *Fowler v. Phoenix Ins. Co.*, 35 Or 559, 559, 57 P 421 (1899), an insured made a claim on his insurance policy after a house fire, claiming losses of $350 on the dwelling, $100 on household furniture, and $50 on family clothing. The policy included a provision that "[t]his entire policy shall be void *** in case of any fraud or false swearing by the insured touching any matter relating to this insurance, or

the subject thereof, whether before or after a loss." *Id.* at 565 (omission in original). In investigating the claim, the insurer determined that some of the claimed clothing was not actually in the house at the time of the fire and, on that basis and others, denied coverage. *Id.* at 559-60.

On appellate review, the insured argued that he should be permitted to recover on his dwelling and furniture losses, even if his misrepresentation about clothing precluded him from recovering on his clothing losses:

> "It is now urged that, as the false swearing did not extend to the house itself, or to the household furniture, the plaintiff was entitled to recover for the loss incurred on those two items, notwithstanding he may have sworn falsely concerning the loss upon his wearing apparel. This argument proceeds upon the theory that the contract of insurance is divisible; that it contains, substantially, three contracts, for the purposes of this controversy; and while false swearing or an attempt to defraud might have rendered the policy void as it pertained to the wearing apparel, yet that, notwithstanding, plaintiff is entitled to recover as to the house and furniture."

*Id.* at 564-65. After reviewing case law from other jurisdictions, the Oregon Supreme Court rejected that argument, emphasizing the policy language about the "entire policy" being void in the event of fraud or false swearing, and noting that it was joining the majority of other jurisdictions. *Id.* at 565-68.

More than six decades later, in 1964, the Oregon Supreme Court reaffirmed the point in an oft-cited footnote in *Henricksen*: "An insurance contract will not be construed as severable between the several classes of property it covers. A misrepresentation after the loss as to a single material fact will forfeit the entire insurance contract." 237 Or at 542 n 1. A few years after *Henricksen*, the insurance code was reorganized and modernized, but no changes were made to the mandatory fire insurance language. *See Preliminary Draft of the Advisory Committee on Insurance Law Revision*, Foreword at xxxiii (Sept 1966) ("The Standard Fire Insurance Policy, as specified in the existing law, is

continued with no change in \*\*\* this draft.").[3] Thus, under longstanding Oregon law, the general maxim disfavoring forfeiture of insurance contracts—*see Dakin v. Queen City Fire Insurance Co.*, 59 Or 269, 277, 117 P 419 (1911) ("It is a maxim of universal application that forfeitures are not favored.")—is trumped by the concealment, misrepresentation, or fraud policy provision required by ORS 742.208.

Accordingly, we reject plaintiff's argument that his misrepresentation about the Boxwood property was immaterial because it pertained only to "collateral" benefits, rather than his dwelling coverage or personal property coverage. Because the policy is not severable, it does not matter that the misrepresentation pertained to only one type of coverage—Loss of Use/ALE coverage—and not the others.

We next turn to plaintiff's alternative argument: that there is at least a dispute of fact as to whether his misrepresentations about the Boxwood property were material. Materiality is usually a question for the jury, as it often turns on factual disputes, unless the evidence allows only one legal conclusion. *Santilli*, 278 Or at 57 (stating, in the context of insurance application fraud, that "the materiality of the false information is normally a question of fact" but that, "under some circumstances the misrepresentations may be found to be material as a matter of law"); *cf. Johnstone v. Zimmer*, 191 Or App 26, 34, 81 P3d 92 (2003) (stating similarly, in the context of breach of contract, that "[w]hether a breach is material is a question for the fact-finder unless the uncontested evidence leads to only one legal conclusion"). In this case, the trial court ruled that plaintiff's Boxwood misrepresentations were material as a matter of law.

Oregon's little existing case law regarding claims fraud (as distinct from application fraud) involves an

---

[3] Prior to 1967, the relevant statute was ORS 744.100, which required the following provision in a fire insurance policy: "This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto." ORS 744.100 (1965). That language was moved verbatim to ORS 743.612 in 1967. *See* ORS 743.612 (1967). ORS 743.611 was then renumbered as ORS 742.208, with minor amendments, in 1989.

insured's overvaluation or overstatement of lost property. *See, e.g.*, *Fowler*, 35 Or at 559, 568 (policy void where insured falsely claimed more clothing than was actually destroyed in fire); *McBride*, 295 Or App at 400-01 (policy void where insured falsely claimed that a number of personal property items were destroyed in fire); *Callaway*, 123 Or App at 23 (policy void where insured overstated the value of his stolen truck by overvaluing certain parts and accessories and fabricating others). However, the same fundamental principles apply. The cost of obtaining alternative living arrangements after one's home is rendered uninhabitable by fire are a different type of monetary loss arising from a fire, but they are a type of loss nonetheless. ALE coverage is different than personal property coverage, but both are policy benefits.[4]

As plaintiff points out, an insurer has greater ability to investigate an insured's post-fire living arrangements than to investigate the value of personal belongings destroyed in a fire. That reality undermines one reason that has been given for why it is so important to encourage truthfulness by insureds in the claims process—to the point of risking total policy forfeiture for untruthfulness:

> "By the very nature of things, the company is obliged in a marked degree to look to the assured, and to depend very largely upon his statements and representations for the ascertainment of the actual loss sustained; and hence it is required of him, and he has accordingly agreed, under the penalty of a forfeiture of his right to the enforcement of the contract, that he will answer faithfully and truly touching the amount of such loss."

*Fowler*, 35 Or at 563-64; *see also* 13 *Couch on Insurance* § 186:1 (3d ed 2019) (describing an insurer's necessary

---

[4] There is very little published or available case law involving fraudulent misrepresentations in connection with ALE benefits, even if one looks beyond Oregon, but what little exists is consistent with our conclusion. *See, e.g.*, *McKellar v. State Farm Fire & Cas. Co.*, No 14-CV-13730, 2016 WL 304759, at *11 (ED Mich Jan 26, 2016) (stating, where the insured allegedly obtained $9,000 in ALE benefits by fraud, that "[a] finding of fraud or concealment concerning [Plaintiff's] claim for ALE benefits will void the whole policy and bar Plaintiff's recovery of any benefits"); *Wong Ken v. State Farm Fire & Cas. Co.*, 685 So 2d 1002, 1003-04 (Fla Dist Ct App 1997) (holding that an insured's fraudulent claim for $81,000 in ALE benefits, in connection with a valid claim for $1,100,000 in dwelling and personal property losses, triggered the "concealment or fraud" provision in the policy).

reliance on the insured for personal information about the insured, beginning at the application stage and continuing into the post-loss stage, as the reason that insurers take so seriously an insured's post-loss duties to the insurer). But it does not follow that a misrepresentation is material *only* if the insurer has little or no ability to verify a claim. Nothing in existing case law supports that proposition.

As for whether a $3,600 misrepresentation is "material," the existing case law is limited. In *Callaway*, 123 Or App at 21-23, the exact amount at issue is not discernable from our opinion, but *at least* $997.50 of a $22,085.54 insurance claim was fraudulent, which we described as "clearly material." In *Fowler*, 35 Or at 559, the insured exaggerated how much family clothing was lost in a fire, where the entire clothing claim was 10% of the total insurance claim. Meanwhile, in an unpublished Ninth Circuit opinion cited by plaintiff, the court posited that, if the insured's burned couch was worth $5,000, but he claimed a value of $5,001, that "probably would not" be a material misrepresentation under the *Callaway* standard. *Allstate Ins. Co. v. Breeden*, 216 F App'x 655, 659 (9th Cir 2007) (applying Oregon law).

In this case, for purposes of appeal, there is no factual dispute that plaintiff misrepresented that he was renting the Boxwood property and that that misrepresentation had a monetary value of $3,600. That distinguishes this case from situations in which disputes about the insured's underlying conduct or the monetary amount at issue have precluded summary judgment on the materiality issue. *See, e.g.*, *Fine*, 725 F2d at 182-83 ("The standard or test by which to measure the materiality of a statement is sometimes regarded as a pure question of law and sometimes regarded as a mixed question of law and fact. In this case, where the statements were admittedly made and the finding of their falsity is not attacked on appeal, the question seems to be purely one of law * * *."); *Breeden*, 216 F App'x at 659 (concluding that the issue of materiality had to be left to a jury, because "in this case the actual values and discrepancies remain unresolved").

The amount at issue, $3,600, is approximately 10 percent of the total ALE benefits paid. *Cf. Fowler*, 35 Or at

559; *Callaway*, 123 Or App at 21-23. It is a much smaller proportion of plaintiff's total insurance claim.[5] However, *Henricksen* cautions against focusing too much on the exact *amount* of money at issue in assessing materiality. Per the Supreme Court,

> "if the misrepresentation is material the insurer need not establish as a part of its defense that it suffered or would suffer a pecuniary loss as a result of the misrepresentation. Thus we have recognized that no recovery will be allowed where a false claim is made, even though the actual loss exceeds the amount covered by the policy."

*Henricksen*, 237 Or at 543; *see also Cox*, 110 Wash 2d at 648, 757 P2d at 502 (concluding that an insured's misrepresentation was material, where he falsely claimed $324,420 in personal property losses, even though his "actual personal property loss" exceeded the $137,000 policy limit, and noting that voiding the policy is intended to penalize willful conduct, "regardless of the fact that the insurer would not have been required to pay any greater amount had the falsity not been demonstrated").

That approach is consistent with the broader conception of materiality discussed in *Fine*. *Callaway* took from *Fine* the principle that a misrepresentation is material if it is "'relevant and germane to the insurer's investigation as it was then proceeding.'" *Callaway*, 123 Or App at 23 (quoting *Fine*, 725 F2d at 183). That statement should not be read too narrowly, however, and may be better understood by reference to this more detailed description of materiality in *Fine*:

> "False sworn answers are material if they might have affected the attitude and action of the insurer. They are equally material if they may be said to have been calculated either to discourage, mislead or deflect the company's investigation in any area that might seem to the company, at that time, a relevant or productive area to investigate."

725 F2d at 184. That approach is consistent in principle with *Henricksen*, as well as with the standard for application

---

[5] Plaintiff describes his insurance claim as being in the amount of $1,099,925, which is equal to the sum of his policy limits for the dwelling ($475,500), dwelling extension ($267,800), and personal property ($356,625).

fraud. *See Walker*, 114 Or at 559-60 (describing a misrepresentation in an application as material if it "would reasonably tend to influence the action of the insurer in accepting or declining the risk or in fixing the amount of the premium to be paid"). Under that standard, plaintiff's misrepresentation that he was living at the Boxwood property from June 19 to August 31, 2017, at a cost of $1,500 monthly, was material, in that it undoubtedly might have affected the attitude and action of defendant, particularly with respect to paying ALE benefits under the policy.

In sum, the trial court did not err in concluding that plaintiff's misrepresentation that he was living at the Boxwood property at a cost of $1,500 per month was material for purposes of the "Concealment, Misrepresentation or Fraud" provision in his insurance policy. Forfeiture of the entire policy is undoubtedly a harsh penalty. *See McBride*, 295 Or at 407 (recognizing that "the loss of anticipated insurance benefits may be a severe blow"). However, it is the penalty that the legislature appears to have intended in enacting ORS 742.208, and it is what the policy requires under existing case law. Accordingly, the trial court did not err in granting summary judgment for defendant on its second affirmative defense.[6]

Affirmed.

---

[6] Given our conclusion that plaintiff's Boxwood misrepresentation voided the entire policy, we need not consider the trial court's alternative bases for summary judgment, regarding plaintiff's income misrepresentation and pre-fire-residency misrepresentation.